UMBERG ZIPSER LLP
Dean J. Zipser (SBN 94680)
dzipser@umbergzipser.com
Adina W. Stowell (SBN 211719)
astowell@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA  92614
Telephone: (949) 679-0052
Fax:  (949) 679-0461

*Attorneys for Defendant*
*Home Depot U.S.A., Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WEEKS, individually and on behalf of all others situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  2:19-cv-06780-FMO-AS<br><br>ASSIGNED TO:<br>Hon. Fernando M. Olguin<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HOME DEPOT U.S.A., INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:            January 16, 2020<br>Time:           10:00 a.m.<br>Courtroom:   6D<br><br>Complaint Filed:  August 5, 2019<br>Amended Complaint Filed: November 22, 2019 |

{193321.1}

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………...      1

II.     RELEVANT FACTS……………………………………………..      2

        A.      Glyphosate and Roundup……………………………      2

        B.      Plaintiff's Allegations……………………………….      5

III.    LEGAL STANDARD……………………………………………...      6

IV.     ARGUMENT…………………………………………………......      6

        A.      Plaintiff's Claim Is Expressly Preempted By FIFRA ..............      6

                1.      Plaintiff's Claim Seeks to Impose a State-Law Labeling
                        or Packaging
                        Requirement……………………………………      7

                2.      Plaintiff's Claim Would Impose a Requirement "In
                        Addition to" and "Different from" FIFRA's
                        Requirements ……………………………………      8

        B.      Plaintiff's Claim Is Barred By Impossibility
                Preemption……………………………………………..      12

        C.      Home Depot Cannot be Held Liable Under the UCL Because
                Plaintiff Admits That Home Depot Did Not Participate In,
                Control, or Adopt the Alleged Unlawful
                Practices……………………………………………..      13

        D.      Plaintiff's Claim Is Substantively a Proposition 65 Claim, and
                Is Thus Barred By His Failure to Comply With Proposition
                65's Notice Requirements and a Current Injunction Preventing
                Enforcement of a Proposition 65 Warning for
                Glyphosate……………………………………………….

                                                                        16

                1.      Plaintiff has not complied with Proposition 65's notice
                        requirements………………………………….      17

                2.      The Eastern District of California's injunction in *Wheat
                        Growers* prevents enforcement of a cancer warning label
                        for glyphosate ………………………      18

        E.      Plaintiff Does Not Plead His Fraud Claim with the Particularity
                Required by Fed. R. Civ. P.
                9(b)……………………………………………….      19

        F.      Plaintiff Lacks Article III Standing to Seek Injunctive Relief
                Because He Does Not Plead That He Is Likely to Suffer Future
                Injury……………………………………………      20

1.    Plaintiff Fails to Allege an Intention to Purchase Roundup in the Future……………………………... 21

2.    There Is No Plausible Likelihood of Future Injury Given Plaintiff's Allegation that Roundup Is Carcinogenic……………………………………….. 23

V.    CONCLUSION……………………………………………... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Pages**

*Anthony v. Pharmavite,*
2019 WL 109446 (N.D. Cal. Jan. 4, 2019)..........................................................23, 24

*Bates v. Dow Agrosciences LLC,*
544 U.S. 431 (2005).........................................................................6, 7, 8, 9, 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .........................................................................................6

*Burger v. Lowe's Home Centers, LLC,*
2016 WL 1182266 (Cal. Ct. App. Mar. 28, 2016)..............................................14

*Carias v. Monsanto Co.,*
2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ............................................11, 12

*Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (Cal. 1999).......................................................................16, 17, 18

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004) ..............................................................................6

*Cordes v. Boulder Brands USA, Inc.,*
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018)...............................................21, 22

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) ...............................................................21, 22, 23

*DiPirro v. Am. Isuzu Motors, Inc.,*
119 Cal. App. 4th 966 (2004) ..............................................................................17

*Emery v. Visa Int'l Serv. Ass'n,*
95 Cal. App. 4th 952, 116 Cal. Rptr. 2d 25 (2002) ............................................13

*Gomez v. Carmax Auto Superstores California, LLC*
2015 WL 350219 (C.D. Cal. Jan. 22, 2015) ................................................19, 20

*Harris v. R.J. Reynolds Vapor Co.,*
2016 WL 6246415, (N.D. Cal. Sept. 30, 2016) .....................................................17

*Herron v. Best Buy Co. Inc.,*
924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................13, 15

*In re Arris Cable Modem Consumer Litig.,*
2018 WL 288085 (N.D. Cal. Jan. 4, 2018).............................................................20

*In re Hydroxycut Mtg.& Sales Practices Litig.,*
801 F. Supp. 2d 993 (S.D. Cal. 2011).........................................................13, 14, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.,*
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................19

{193321.1}                                iii

*In re Vaccine Cases,*
  134 Cal. App. 4th 438, 36 Cal. Rptr. 3d 80 (2005) ............................................17

*Jarvis v. JP Morgan Chase Bank, N.A.,*
  2010 WL 2927276 (C.D. Cal. July 23, 2010)......................................................2

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ...........................................................................20

*Lanovaz v. Twinings N. Am., Inc.,*
  726 F. App'x 590 (9th Cir. 2018) ......................................................................22

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)............................................................................................6

*Matic v. U.S. Nutrition, Inc.,*
  2019 WL 3084335 (C.D. Cal. Mar. 27, 2019)...................................................24

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996)..........................................................................................10

*Merck Sharp & Dohme Corp. v. Albrecht,*
  139 S. Ct. 1668 (2019) ................................................................................12, 13

*Min Shook Shin v. Umeken USA, Inc.,*
  773 F. App'x 373 (9th Cir. June 3, 2019)..........................................................22

*Mirzaie v. Monsanto Co.,*
  No. 15-04361, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016)................................8

*N.Y. v. San Ramon Valley Unified Sch. Dist.,*
  2018 WL 2463243 (N.D. Cal. June 1, 2018)......................................................20

*Nat'l Ass'n of Wheat Growers v. Zeise,*
  309 F. Supp. 3d 842 (E.D. Cal. 2018). ..............................................4, 5, 6, 18, 19

*Resnick v. Hyundai Moto America, Inc.,*
  2017 WL 6549931(C.D. Cal. Aug. 21, 2017) ....................................................19

*Riegel v. Medtronic, Inc.,*
  552 U.S. 312 (2008)...............................................................................8, 10, 11

*Sciortino v. Pepsico, Inc.,*
  108 F. Supp. 3d 780 (N.D. Cal. 2015).........................................................17, 18

*Tabler v. Panera LLC,*
  2019 WL 5579529(N.D. Cal. Oct. 29, 2019)                                    20

*Taylor AG Indus. v. Pure-Gro,*
  54 F.3d 555 (9th Cir. 1995) .................................................................................7

*Thomas v. Walt Disney Co.,*
  337 F. App'x 694 (9th Cir. 2009) .......................................................................2

*Wiersum v. U.S. Bank, N.A.,*

785 F.3d 483 (11th Cir. 2015) .................................................................. 12

*Wuebker v. Wilbur-Ellis Co.,*
    418 F.3d 883 (8th Cir. 2005) ................................................................. 8

*Wyeth v. Levine,*
    555 U.S. 555 (2009) .............................................................................. 12

**Statutes**

21 U.S.C. § 360k ....................................................................................... 10

40 C.F.R. § 156.10(a)(5)(ii) ....................................................................... 2

40 C.F.R. § 158.500 ............................................................................... 3, 4

7 U.S.C. § 136(p)(2) ................................................................................. 15

7 U.S.C. § 136(p)(2)(A) ............................................................................. 7

7 U.S.C. § 136(q)(1)(A), (F), (G) ........................................................ 2, 11

7 U.S.C. § 136a(a) ..................................................................................... 2

7 U.S.C. § 136a(c)(5) ........................................................................... 9, 10

7 U.S.C. § 136j ......................................................................................... 11

7 U.S.C. § 136j(1)(A) ................................................................................. 9

7 U.S.C. § 136j(1)(B) ................................................................................. 6

7 U.S.C. § 136j(a)(1)(B) ........................................................................... 15

7 U.S.C. § 136v ......................................................................................... 6

7 U.S.C. § 136v(b) ..................................................................................... 7

7 U.S.C. § 136a(c)(1)(F) ............................................................................ 2

7 U.S.C. § 136a(c)(2)(A) ............................................................................ 2

7 U.S.C. § 136a(c) ..................................................................................... 2

7 U.S.C. § 136c(a) ..................................................................................... 2

7 U.S.C. § 136a(c)(5)(C) ............................................................................ 2

Code § 25249.6 .................................................................................. 18, 19

Code § 25249.7(d)(1) ............................................................................... 17

Rule 9(b) of the Federal Rules of Civil Procedure ............................... 1, 2

## I.  INTRODUCTION

Plaintiff's Complaint, which alleges that Home Depot is liable under California's Unfair Competition Law ("UCL") for failing to warn that Roundup poses a cancer risk, should be dismissed for six reasons.

First, Plaintiff's claim is expressly preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), which bars any state-law requirements for product labeling or packaging "in addition to or different from" FIFRA's requirements. While FIFRA requires that pesticides be sold without deviation from the EPA-approved label, Plaintiff alleges that state law *requires* a deviation from this label, including statements that EPA has determined to be false and misleading.

Second, Plaintiff's claim is preempted under the doctrine of impossibility preemption. Home Depot cannot simultaneously comply with FIFRA's labeling requirements prohibiting the addition of a cancer warning *and* a contrary state-law duty requiring a cancer warning.

Third, Plaintiff's claim fails because he admits that Home Depot has "no control" over the product labels, and did not participate in, control, or adopt the alleged unlawful practices. California law is clear that retailers are not required to "police" the labeling of the products they sell, and cannot be held liable under the UCL simply for selling a product that is allegedly labeled in a misleading manner.

Fourth, regardless of how Plaintiff attempts to camouflage his claim, it is in substance a Proposition 65 claim, because he seeks a cancer warning for a Proposition 65-listed chemical (glyphosate). Plaintiff's claim is barred by his failure to comply with Proposition 65's notice requirements, and the current statewide injunction preventing the enforcement of such a warning for glyphosate.

Fifth, while Plaintiff's claim is based on Home Depot's purported fraudulent omissions, Plaintiff fails to meet the heightened pleading requirements for fraud-based claims under Rule 9(b) of the Federal Rules of Civil Procedure.

Finally, Plaintiff lacks standing to pursue his claim for injunctive relief because his own allegations confirm that he is not likely to suffer any future injury.

## II.   RELEVANT FACTS

### A.   Glyphosate and Roundup

Home Depot is a chain of home improvement stores that sells Roundup. Compl. ¶ 9. Non-party Monsanto manufactures Roundup. *Id*. Home Depot makes no alterations to Roundup "between manufacture and points of sale." *Id.* ¶ 16.

Glyphosate is the main active ingredient in Roundup. *Id.* ¶¶ 11, 17. Glyphosate has been registered with the EPA since 1974. *See* Stowell Decl. Ex. A at 12; *see also* Compl. ¶ 17.[1]

Under FIFRA, all herbicides sold in the U.S. must be registered with the EPA. *See* 7 U.S.C. § 136a(a). Before registering an herbicide, the EPA must determine that the herbicide (1) does not cause unreasonable risks to human health or the environment when used as directed in the product labeling (7 U.S.C. §§ 136a(c)(5)(C), 136(bb)); and (2) is not "misbranded," meaning that its label contains adequate instructions for use, includes all necessary warnings or cautionary statements, and is not "false or misleading in any particular" (7 U.S.C. § 136(q)(1)(A), (F), (G); *id.* § 136a(c)(5)(B); 40 C.F.R. § 156.10(a)(5)(ii)).

FIFRA and its implementing regulations require pesticide registrants to provide voluminous scientific data, which EPA analyzes in deciding whether to approve a proposed label. *See* 7 U.S.C. §§ 136a(c)(1)(F), (c)(2)(A), 136c(a). EPA

---

[1] The exhibits to the declaration of Adina Stowell filed concurrently herewith are public records, which this court may consider on a motion to dismiss without converting it to a motion for summary judgment. *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 695 (9th Cir. 2009). Matters of public record subject to judicial notice include documents available on government websites, which are generally not considered to be subject to reasonable dispute. *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010).

must consider this information along with submissions and studies of health risks, including carcinogenicity and toxicity, prior to making that decision. *See* 7 § 136a(c)(5)(B); 40 C.F.R. § 158.500. In approving a pesticide label, EPA exercises its expert judgment both about those scientific issues and other mandatory label provisions intended to protect applicators and others. *Id.* § 152.112(f). EPA-mandated label provisions relevant to health and safety include "human hazard" and "precautionary statements" warnings about potential health risks and mitigation actions (*id.* § 156.60–156.70); mandatory personal protective equipment (*id.* § 156.212); and detailed application directions to protect human health and safety (*id.* § 156.10(i)(2)).

In the course of its registration decisions, the EPA has repeatedly evaluated the potential health risks of glyphosate. And each time, after reviewing the available scientific studies, it has concluded that glyphosate does not pose a risk of cancer in humans, classifying glyphosate in the EPA's lowest risk category since at least 1991. *See* Stowell Decl. Exs. A at 13, B at 1-2, D at 83, E at 3. For example:

- In 1991, the EPA classified glyphosate as non-carcinogenic for humans "based on a lack of convincing evidence of carcinogenicity in adequate studies." *Id.* Ex. D at 40.

- In 1993, when it reregistered glyphosate, the EPA concluded there was "evidence of non-carcinogenicity in humans." *Id.* Ex. D at 25.

- In 1997, the EPA concluded in the Federal Register that "[d]ata indicate that glyphosate is a group E carcinogen (evidence of noncarcinogenicity for studies in humans …)." 62 Fed. Reg. 17,723, 17,728 (1997).

- In 2002, in response to a challenge to glyphosate's safety, the EPA found "[n]o evidence of carcinogenicity." 67 Fed. Reg. 60,934, 60,935-43 (2002); *see also* 69 Fed. Reg. 65,081, 65,086 (2004) ("Glyphosate has no carcinogenic potential").

- In 2008, the EPA concluded in the Federal Register that "[t]here is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or

reproductive toxicant." 73 Fed. Reg. 73,586, 73,589 (2008); *see also* 78 Fed. Reg. 25,396, 25,398 (2013).

- In 2015, after IARC released its report on glyphosate, the EPA's Office of Pesticide Programs re-evaluated the chemical and again classified it as "Not Likely to be Carcinogenic to Humans." Stowell Decl. Ex. A at 13.

- In 2016 and again in 2017, the EPA concluded that "the available data and weight-of-evidence clearly do not support the descriptors 'carcinogenic to humans,' 'likely to be carcinogenic to humans,' or 'inadequate information to assess carcinogenic potential' and that the scientific evidence provides "strongest support" for the descriptor "not likely to be carcinogenic to humans." *Id.* Ex. C at 137, 141, Ex. A at 143-44.

- In April 2019, EPA again concluded that it has "not identif[ied] any human health risks from exposure to any use of glyphosate." *Id.* Ex. F at 35.

In 2017, California nonetheless added glyphosate to its "Proposition 65" list, automatically triggering a requirement to provide a cancer warning for sales of glyphosate products in California. This listing relied on the International Agency for Research on Cancer's ("IARC") 2015 classification of glyphosate as "probably carcinogenic." That classification—which IARC has also applied to drinking very hot beverages and eating red meat—is based on what it considered limited evidence in humans. *Id.* Ex. F at 7. EPA has announced, however, that it "disagrees with IARC's assessment of glyphosate." *Id.* Ex. B at 1. EPA explained that "EPA scientists have performed an independent evaluation of available data since the IARC classification to reexamine the carcinogenic potential of glyphosate and concluded that  glyphosate is 'not likely to be carcinogenic to humans.'" *Id.* It has further observed that its assessment of the non-carcinogenicity of glyphosate is "consistent with other  international expert panels and regulatory authorities" *Id.*

A federal district court in California has enjoined enforcement of the Proposition 65 cancer warning requirement for glyphosate as "false and misleading" and thus unconstitutional. *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 853-54 (E.D. Cal. 2018).

In an August 2019 letter to registrants of glyphosate products, the EPA explained that, based on its consistent findings of non-carcinogenicity and its disagreement with IARC, a cancer warning on glyphosate-based products would be *"false and misleading"* and thus render any glyphosate product with such labeling "*misbranded pursuant to section 2(q)(1)(A) of FIFRA*." Stowell Decl. Ex. B. Consequently, EPA determined, pesticide products including such a cancer warning "*do not meet the requirements of FIFRA*." *Id.* The EPA affirmed, therefore, that it *would not approve* any labeling with a cancer warning and will require any labeling containing such a statement to be changed. *Id.*

## B.   Plaintiff's Allegations

Despite the EPA's repeated conclusions that glyphosate is not carcinogenic, Plaintiff alleges that Home Depot violated the UCL by "selling, marketing, and advertising Roundup without informing consumers that it poses a cancer risk." Compl. ¶ 80. Plaintiff admits that Home Depot has "no control over the information on the labels of the Roundup products," but alleges that Home Depot should have "provid[ed] consumers with additional information on store shelves or at the point of sale about the products' potential health risks." *Id.* ¶ 3.

Plaintiff contends he was unaware of the supposed carcinogenicity of glyphosate, and purchased Roundup from a Home Depot store in Ventura, California. *Id.* ¶¶ 60, 63. He alleges that Home Depot "did not provide Plaintiff with any information regarding the carcinogenic nature" of the product and should have "display[ed] it on the shelves" where the product is sold. *Id.* ¶¶ 60-62. Plaintiff contends that "he would not have purchased" Roundup if he had known it was carcinogenic. *Id.* ¶ 63.

Plaintiff sues on behalf of himself and a putative class who purchased Roundup in California from Home Depot for personal use. *Id.* ¶ 65. He seeks certification of a class under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3)

UMBERG ZIPSER LLP
ATTORNEYS AT LAW
IRVINE

{193321.1}

5

for violations of the unfair prong of the UCL. *See id.*

Plaintiff's single claim under the unfair prong of UCL requests an injunction requiring Home Depot to "notify consumers at the point of sale . . . that the glyphosate in Roundup has been linked to cancer in humans" and "restitution of the money" acquired by Home Depot from selling the product. *Id.* ¶ 89. Plaintiff does not explain how Home Depot could legally comply with an injunction requiring it to make a claim that the EPA has determined is false and misleading and would constitute misbranding under FIFRA, particularly since it is a *federal offense* to make any claim in connection with the sale of a registered pesticide that substantially differs from the EPA-approved label. 7 U.S.C. § 136j(1)(B).

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Arguments based on lack of Article III standing are properly raised under Federal Rule of Civil Procedure 12(b)(1). To survive a motion to dismiss, a plaintiff must demonstrate the "irreducible constitutional minimum of standing": injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

## IV.  ARGUMENT

This Court should dismiss Plaintiff's Complaint for at least six reasons.

## A.  **Plaintiff's Claim Is Expressly Preempted By FIFRA.**

FIFRA is a comprehensive statutory scheme controlling the use, sale, and labeling of pesticides. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 437-438 (2005). In a section titled "Authority of States," FIFRA delineates the respective roles of the federal and state governments in setting standards for labeling and other aspects of pesticide sale and use. 7 U.S.C. § 136v. A subsection titled "Uniformity"

1   includes an express preemption provision prohibiting states from "impos[ing] …

2   any requirements for labeling or packaging in addition to or different from those

3   required under this Act [*i.e.*, FIFRA]." 7 U.S.C. § 136v(b).

4       The Supreme Court in *Bates* established a two-part test to determine whether

5   a state law claim is pre-empted by § 136v(b). *Id.* at 444. First, state law must

6   impose a "requirement" for "labeling or packaging." Second, this state law

7   requirement must be "in addition to or different from" a requirement imposed under

8   FIFRA. *Id.* Plaintiff's claim satisfies both parts of this test.

9       **1.    Plaintiff's Claim Seeks to Impose a State-Law Labeling or**
         **Packaging Requirement.**
10

11      A state law duty is a "requirement for labeling or packaging" under FIFRA if

12  it "set[s] a standard for a product's labeling that [defendant's] label is alleged to

13  have violated by containing false statements and inadequate warnings." *Bates*, 544,

14  U.S. at 446. Plaintiff seeks to enforce such a "requirement" in this case, as he

15  expressly claims that Roundup does not contain "appropriate health and safety

16  warnings" regarding glyphosate's carcinogenicity, and that state law requires Home

17  Depot to add a "point of purchase shelf-warning" that "glyphosate in Roundup has

18  been linked to cancer in humans." *E.g.*, Compl. ¶ 84-85, 89. Thus, Plaintiff's theory

19  is that the EPA-approved label is deficient under state law, and that state law

20  requires Home Depot to cure this deficiency with a "point of sale shelf-warning"—

21  which constitutes labeling under federal law. 7 U.S.C. § 136(p)(2)(A) (labeling

22  includes any "written, printed, or graphic matter accompanying the pesticide … at

23  any time"); *see also Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir.

24  1995) ("any claims that point-of-sale signs, consumer notices, or other

25  informational materials failed adequately to warn the plaintiff necessarily challenge

26  the adequacy of the warnings provided on the product's labeling or packaging").

27      Plaintiff seeks to enforce this state law requirement through both an

28  injunction and monetary restitution. Either way, Plaintiff's claim is premised on a

state law "requirement for labeling or packaging." In *Bates*, the Supreme Court considered whether FIFRA "pre-empts [plaintiffs] state-law claims for damages." 544 U.S. at 434. It held that the plaintiffs' damages claims for fraud and failure to warn "are premised on common-law rules that qualify as 'requirements for labeling or packaging." *Id*. at 447; *see also Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (FIFRA "preempts claims based on legal rules that require manufacturers to label or package [their product] in a particular way."); *Reigel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (term "requirement" includes common-law claims, even when the "remedy is limited to damages"); *Cipollone Liggett Grp. Inc.*, 505 U.S. 504 (1992) (plurality) ("[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.").

Like *Bates*, Plaintiff's claim for restitution and an injunction is "premised on" a state law rule "that qualif[ies] as 'requirements for labeling or packaging.'" *Bates*, 544 U.S. at 447; *see also Mirzaie v. Monsanto Co.*, No. 15-04361, 2016 WL 146421, *2 (C.D. Cal. Jan. 12, 2016) (dismissing complaint  as preempted; "[t]here can be no dispute that Plaintiffs seek to impose a labeling requirement different or in addition to that required under FIFRA, as the Roundup label to which Plaintiffs object … was approved by the [EPA]."). Thus, Plaintiff's claim would impose a state-law requirement for labeling or packaging.

### 2. Plaintiff's Claim Would Impose a Requirement "In Addition to" and "Different from" FIFRA's Requirements.

The purported state law requirement on which Plaintiff's claim is premised diverges from at least two FIFRA requirements.

*First*, EPA's approval of a label in the course of registering and re-registering a product compels the use of that approved label, without deviation, and bars the sale or distribution of the product if any "claims made for it" differ from

"the statement required in connection with its registration under section 136a of this title [*i.e.*, its approved labeling]." 7 U.S.C. § 136j(1)(A); *see also id.* § 136a(c)(1) (required "statement" includes "a complete copy of the labeling of the pesticide"). Any violation of the requirement not to deviate from the approved label can result in criminal and civil penalties. *See id.* § 136l(a)–(b). Here, EPA has approved labels for Roundup products with no cancer warning, based on decades of findings that glyphosate poses no cancer risk to humans, and the EPA consistently determining that no cancer warning is appropriate. *See supra* Ex. A at 12-13, Ex. B at 2. By virtue of § 136j(a), use of the label approved by the EPA for glyphosate products, which contain no cancer warning, is a federal requirement specific to these products that permits no deviation. The EPA underscored that requirement this past August, when it issued a letter to registrants of glyphosate products expressly notifying them that it would *not* approve such a warning. *See supra* Stowell Decl. Ex. B. A state-law requirement to include a warning that deviates from the EPA-approved label—indeed, a warning that EPA has expressly said it would not allow—is "in addition to" and "different from" the labeling requirement imposed by the EPA under FIFRA. Any such state law requirement is therefore expressly preempted.

That conclusion is compelled by the Supreme Court's holding in *Bates*, that any "state-law labeling requirement" that differs from what FIFRA requires cannot "survive preemption." 544 U.S. at 453. In *Bates*, it was not clear that the asserted state law labeling requirements differed from federal law because the label statements concerned product efficacy and not health or safety. As the Supreme Court explained, the EPA had expressly waived review of efficacy issues under FIFRA pursuant to 7 U.S.C. § 136a(c)(5). The Court thus recognized that the asserted state law claims might merely be permissibly enforcing the same substantive misbranding requirement that exists under FIFRA, and remanded to determine whether the state requirements were the same as FIFRA's. *See id.* at 453.

In sharp contrast, when registering the glyphosate products at issue here, the EPA explicitly addressed the very labeling question Plaintiff raises, concluded that the absence of a cancer warning does not render the products misbranded, and required the use of a label that has no cancer warning. Plaintiff's claim, which seeks to impose a different and conflicting "state-law labeling requirement," therefore cannot "survive preemption." *Id.*

This conclusion is confirmed by the holdings in in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), which concerned a preemption provision in the Medical Device Amendments of 1976, 21 U.S.C. § 360k, that (as the Court noted in *Bates*) is effectively identical to FIFRA's express preemption provision. *See* 544 U.S. at 447–48. In *Lohr*, a medical device had been approved for sale because it was substantially equivalent to a device that was exempt from premarket approval, but it had never undergone premarket approval for safety and efficacy. The Supreme Court concluded that because FDA had established no "requirements" for safety and efficacy of the device that would be contradicted by state tort law, the plaintiff's tort claims were not preempted. *See Lohr*, 518 U.S. at 492–502. *In Riegel*, by contrast, FDA had approved the safety and efficacy of the device at issue, and under the statute the device had to be "made with almost no deviations" without FDA's further approval. 552 U.S. at 319. Because FDA had thereby imposed federal "requirements" specific to the device in question, the Court concluded that "the attributes that *Lohr* found lacking in § 510(k) review are present here" and any additional or different state law tort requirements were expressly preempted. *Id.* at 322–23.

*Riegel* compels the same answer here. The EPA subjected glyphosate to exacting review for health risks, including carcinogenicity, and having determined that it was not a carcinogen, approved and required the use of a label with no cancer warning. And as in *Riegel*, EPA's approval triggers specific and mandatory federal

labeling requirements that preempt any additional/different state-law requirements.

*Second*, FIFRA makes it "unlawful for any person" to "distribute or sell … any pesticide which is adulterated or misbranded." 7 U.S.C. § 136j. Under FIFRA, "[a] pesticide is misbranded if its labeling bears any statement … which is false or misleading in any particular." *Id.* § 136(q)(1)(A). Here, EPA in its August 2019 letter squarely confirmed that adding a cancer warning to the labeling for glyphosate products would render them "misbranded pursuant to section 2(q)(1)(A) of FIFRA [7 U.S.C. § 136(q)(1)(A)]." Stowell Decl. Ex. B at 1.

*Bates* confirms that express preemption is required under these circumstances as well. The Court explained that "a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." 544 U.S. at 447. But if state law requires a pesticide's labeling to say "DANGER" where EPA decides it should include "the more subdued 'CAUTION,'" the state law requirement "would be pre-empted." *Id.* at 453. Here, the difference between the state and federal law requirements are directly opposed, with state law allegedly requiring a cancer warning and federal law prohibiting one.

There cannot be a clearer example of a state-law requirement "different from" and "in addition to" FIFRA's requirements than a claim that would require the defendant to take action directly contrary to the requirements of FIFRA. This Court should thus hold that Plaintiff's claim is barred by § 136v(b)'s express preemption provision and dismiss Plaintiff's complaint with prejudice.[2]

---

[2] A few courts have rejected preemption of state-law failure-to-warn claims based on alleged health risks from EPA-approved pesticides. In *Carias v. Monsanto Co.*, the district court concluded that FIFRA did not preempt a failure-to-warn claim for damages, and explained that it was "assum[ing] that the state law claims at issue in that case and FIFRA imposed identical requirements. 2016 WL 6803780, at *4 (E.D.N.Y. Sept. 30, 2016). Since then, however, EPA has rejected that assumption, including by informing glyphosate registrants that inclusion of a cancer warning would violate FIFRA misbranding provisions. While Home Depot respectfully disagrees with the *Carias* court's conclusion, it has also been

**B.**     **Plaintiff's Claim Is Barred By Impossibility Preemption.**

Plaintiff's claim is also barred by the doctrine of impossibility preemption, which preempts state law "where it is 'impossible for a private party to comply with both state and federal requirements.'" *Bartlett*, 570 U.S. at 473; *see also Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015).

In *Wyeth v. Levine*, 555 U.S. 555, 568 (2009), the Supreme Court noted that plaintiff's claims would have been preempted if there were "clear evidence" the FDA would have rejected the proposed warnings, but found such evidence lacking. *Id*. at 571-72. This year, the Court clarified that "clear evidence" exists if (1) the agency was "fully informed" of the "justifications for the warning" the plaintiff demands, and (2) determined that it would not approve of such a warning. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1676, 1678 (2019). Both prongs of this test are met here.

*First*, the EPA is "fully informed" about the supposed evidence that glyphosate is carcinogenic. It has repeatedly undertaken in-depth scientific reviews of the evidence on glyphosate's safety, and repeatedly concluded that it is safe and non-carcinogenic. *See* Stowell Decl. Exs. A at 13, B at 1-2, D at 83, E at 3. Each of these determinations was based on an extensive review of scientific evidence, and the most recent determinations were made *after* all of the supposed "evidence" of glyphosate's carcinogenicity cited in the complaint was public. *Id.* Ex. B at 1. In fact, in its August 2019 letter, EPA explained that "EPA scientists have performed an independent evaluation of available data," and that it "considered a more extensive dataset than IARC." *Id.* Ex. B at 1. The EPA's determinations also followed a lengthy opportunity for public comment. *Id.* Ex. F at 6-7.

superseded by subsequent developments from the EPA, which have confirmed that a state-law requirement of a cancer warning on glyphosate products is different from and in addition to the requirements of FIFRA.

*Second*, the EPA's consistent findings that glyphosate poses no cancer risk to humans, and repeated determination that no cancer warning is warranted, is "clear evidence" that the EPA would not have approved a request to add a cancer warning if asked. And in August 2019, EPA expressly informed registrants that it would not approve such a warning. EPA's recent letter confirms what has been true for almost three decades: EPA does not believe glyphosate is a carcinogen, it views a cancer warning in these circumstances as false and misleading, and it "would not approve a change to the [product's] label to include" a cancer warning because that would constitute misbranding under FIFRA and its implementing regulations. *Id.* Ex. B; *Albrecht*, 139 S. Ct. at 1672.

As both parts of *Albrecht*'s test are satisfied, Plaintiff's state-law claim fails.

**C.** **Home Depot Cannot be Held Liable Under the UCL Because Plaintiff Admits That Home Depot Did Not Participate In, Control, or Adopt the Alleged Unlawful Practices.**

To be liable under the UCL, a defendant must have "participated in, controlled, or adopted" the alleged unlawful practices. *In re Hydroxycut Mtg.& Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011); *see also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) ("Failure to take on the role of a 'global policeman' is insufficient to support liability under the UCL."); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960, 116 Cal. Rptr. 2d 25 (2002) ("The concept of vicarious liability has no application to actions brought under the unfair business practices act." (citation omitted)); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808-09 (9th Cir. 2007) (applying *Emery* to UCL claims). Plaintiff admits that Home Depot "is not involved in the manufacture and design of the Roundup products" and has "no control" over the information on the product labels. *See* Compl. at ¶¶ 57, 3. Thus his claim fails as a matter of law.

Plaintiff cannot avoid this result by claiming Home Depot is liable simply by offering the product for sale. The mere act of placing allegedly falsely advertised or

misleadingly labeled products on the shelf is insufficient to subject retailers to liability under the UCL. *See In re Hydroxycut Mktg.,* 801 F. Supp. 2d at 1013. That case involved claims by a putative class of consumers who bought a weight loss supplement that allegedly caused adverse health effects. Plaintiffs alleged violations of various consumer protection laws (including the UCL) by the manufacturer and retailers that sold them the products. The court dismissed the consumer protection claims against the retailers because the complaint did not allege facts showing that they (i) participated in, controlled, or adopted as their own representations made by the manufacturer; or (ii) made their own representations about the products that plaintiffs relied on in purchasing the products. 801 F. Supp. 2d at 1013. The court rejected plaintiffs' argument that the retailers could be liable under the UCL "for placing the falsely advertised Products on the shelf and failing to disclaim the [manufactures'] representations." *Id*. at 1012-13 (complaint was "devoid of facts showing that [the retailers] did anything other than sell the Hydroxycut products"); *see also Burger v. Lowe's Home Centers, LLC*, 2016 WL 1182266, at *2 (Cal. Ct. App. Mar. 28, 2016) (unpublished op.) (a "retailer cannot be held liable for the statements of others by merely placing the product on its shelves for resale.").

Like *Hydroxycut,* Plaintiff here does not allege Home Depot participated in, controlled, or adopted as its own any of the alleged unlawful practices. *See generally* Compl. To the contrary, Plaintiff admits that Home Depot "is not involved in the manufacture and design of the Roundup products" and has "no control" over the information on the Roundup labels. *Id.* at ¶¶ 57, 3. Plaintiff does not allege that Home Depot made its own representations about the products. Again, to the contrary, Plaintiff expressly admits that Home Depot had no input regarding the product's labels. *See, e.g.*, *id.* ¶ 16 (where Plaintiff admits that information is "not altered between manufacture and points of sale at [Home Depot]'s retail locations.").

After Home Depot conferred with Plaintiff about its planned motion to dismiss the last iteration of Plaintiff's complaint, Plaintiff amended his complaint to allege that Home Depot should have made additional disclosures regarding Roundup's purported health risks beyond those on the EPA-approved product labels, including on store shelves or at the point of sale. *See Compl*. ¶¶ 3, 62, 89. Plaintiff is wrong for two reasons.

First, Plaintiff has not alleged that Home Depot has any more control over information on store shelves or at the point of sale than it does over the product labels. To the contrary, as discussed above, the law is clear that EPA-regulated "labeling" includes not just the product labels but "all other written, printed, or graphic matter accompanying the pesticide…." 7 U.S.C. § 136(p)(2). Indeed, it is illegal to sell any pesticide when "any claims made for it as a part of its distribution or sale substantially differ from any claims made for it as a part of the [EPA-approved master label]." 7 U.S.C. § 136j(a)(1)(B). The cancer warning Plaintiff seeks not only differs from the EPA-approved label, but the EPA has *specifically* concluded that such a warning would be false and misleading. Stowell Decl. Ex. B.

Second, Plaintiff's theory is contrary to the established rule that a retailer need not act as a "global policeman" for the labeling of every product it sells, and cannot be liable simply for selling a product for which the plaintiff claims the labeling is deficient. *See Hydroxycut*, 801 F. Supp. at 1013; *Herron*, 924 F. Supp. 2d at 1169. If a plaintiff could avoid this rule by pleading that a retailer should have made separate, corrective disclosures at the point of sale, it would force retailers to globally police the labeling for all products they sell. This obviously is not the law.

Because Plaintiff's own allegations confirm that Home Depot was nothing more than a passive retailer, the Complaint fails to state a UCL claim against Home Depot. *In re Hydroxycut Mktg.,* 801 F. Supp. 2d at 1013.

**D.   <u>Plaintiff's Claim Is Substantively a Proposition 65 Claim, and Is Thus Barred By His Failure to Comply With Proposition 65's Notice</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## **Requirements and a Current Injunction Preventing Enforcement of a Proposition 65 Warning for Glyphosate.**

While Plaintiff has styled his claim as a UCL claim, in substance it arises under Proposition 65, which governs claims involving warnings about chemicals with known cancer-causing properties. *See generally* Proposition 65 (codified at Cal. Health & Safety Code §§ 25249.5- 25249.14) Specifically, Plaintiff's claim arises under Proposition 65 because he alleges that Home Depot is liable for not issuing a cancer warning for Roundup's active ingredient (glyphosate). *See generally* Compl. ("cancer" appears 27 times, "carcinogenic" another 19); *id.* ¶ 89 (seeking to require Home Depot "to notify consumers at the point of sale . . . that the glyphosate in Roundup has been linked to cancer in humans"). Plaintiff also attaches Roundup's front label to his Complaint as <u>Exhibit A</u> to show the omission of a cancer warning. *Id.* ¶ 16.[3] As a result, it is clear that his claim arises under Proposition 65.

However, the California Supreme Court has held that parties cannot avoid specific rules governing claims set by specific statutes by filing under more general statutes. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (Cal. 1999). In particular, *Cel-Tech* held that where the legislature has expressly concluded that no action should lie, a plaintiff cannot use the UCL to "'plead around'" an "'absolute bar to relief.'" *Cel-Tech,* 20 Cal. 4th at 182 (1999).

This is true for  Proposition 65 claims. *See In re Vaccine Cases*, 134 Cal. App. 4th 438, 458–59, 36 Cal. Rptr. 3d 80, 94 (2005) ("Under *Cel–Tech,* plaintiffs cannot evade the requirement of pre-suit 60–day notice in Proposition 65 by repleading their cause of action as one for violation of the [UCL]."); *Harris v. R.J.*

25
26
27
28

---

[3]   Plaintiff does not claim that Home Depot made any affirmative misrepresentations or that glyphosate is dangerous for any reason other than its alleged propensity to cause cancer. *See generally id*. Plaintiff also does not claim he was misled into buying the product for any reason other than the omission of a cancer warning. *Id.* ¶ 63 ("Had Plaintiff had known of the carcinogenic properties of Roundup and its links to cancer, he would not have purchased it.").

*Reynolds Vapor Co.*, No. 15-CV-04075-JD, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016) ("A plaintiff cannot sidestep [Proposition 65's] requirements by trying to use the UCL or CLRA to plead around a claim that would be barred under Proposition 65.").

Here, Plaintiff appears to have avoided styling his claim as a Proposition 65 claim because (1) he failed to follow Proposition 65's required notice provisions, and (2) such a claim would be barred by a current injunction preventing enforcement of a Proposition 65 warning for glyphosate. Plaintiff's attempt to disguise his Proposition 65 claim does not save his claim.

### 1. Plaintiff has not complied with Proposition 65's notice requirements.

Proposition 65 provides that a private plaintiff may file suit only after providing a 60-day notice of the alleged violation and a certificate of merit to the alleged violator, the California Attorney General, and the district attorney, city attorney, or prosecutor in each jurisdiction where the alleged violation occurred. Cal. Health & Safety Code § 25249.7(d)(1). These notice requirements are intended to encourage the resolution of disputes without litigation and to give the Attorney General an opportunity to discourage frivolous suits. *See Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 788-89 (N.D. Cal. 2015). Thus, California courts strictly enforce the requirements, and defective notice cannot be cured retroactively. *Id.* at 790 (citing *DiPirro v. Am. Isuzu Motors, Inc.*, 119 Cal. App. 4th 966, 975 (2004); *In re Vaccine Cases*, 134 Cal. App. 4th 438, 457 (2005)).

Plaintiff here does not allege that he complied with these notice requirements. S*ee generally* Compl. Nor can he avoid these requirements simply by styling his claim as one arising under the UCL. *Cel-Tech Commc'ns v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Plaintiff's defective Proposition 65 claim should be dismissed with prejudice. *Sciortino*, 108 F. Supp. 3d at 790.

## 2. The Eastern District of California's injunction in *Wheat Growers* prevents enforcement of a cancer warning label for glyphosate.

Plaintiff's Complaint should also be dismissed because its attempt to impose a cancer warning for glyphosate is a remedy that has been expressly prohibited by the Eastern District of California on First Amendment grounds. *See Wheat Growers*, 309 F. Supp. 3d at 853. *Wheat Growers* concerned a challenge to Proposition 65's warning requirement regarding glyphosate. There, Monsanto, joined by other businesses and trade associations, sought a preliminary injunction preventing California from requiring a Proposition 65 warning label for glyphosate, arguing that such a requirement violated the First Amendment by compelling them to make false, misleading, and controversial statements about their products.

On February 26, 2018, that court granted a preliminary injunction preventing California or anyone "acting in concert" with the State from enforcing the Proposition 65 warning for glyphosate.[4] The court specifically found that a cancer warning for glyphosate would be "false and misleading." *Id. at* 853. The injunction expressly prevented private lawsuits against businesses alleging omissions of cancer warnings regarding glyphosate. *Id*. at 849 ("facing enforcement actions, or even the possible risk of enforcement actions, are cognizable injuries").[5]

---

[4] *See Wheat Growers*, 309 F. Supp. 3d at 854 ("Plaintiffs' request for a preliminary injunction enjoining the warning requirement of California Health & Safety Code § 25249.6 as to glyphosate is GRANTED. Pending final resolution of this action, defendants, their agents and employees, all persons or entities in privity with them, and anyone acting in concert with them are hereby ENJOINED from enforcing as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs, California Health & Safety Code § 25249.6's requirement that any person in the course of doing business provide a clear and reasonable warning before exposing any individual to glyphosate.").

[5] The court later upheld the injunction after California's Attorney General moved to alter or amend it. *See Nat'l Ass'n of Wheat Growers v. Zeise*, No. CV 2:17-2401 WBS EFB, 2018 WL 3000488, at *4 (E.D. Cal. June 12, 2018). The court's preliminary injunction remains in place.

As noted above, Plaintiff's Complaint here alleges just such an omission of a cancer warning regarding glyphosate. *See, e.g.*, Compl. ¶ 89 (seeking to require Home Depot "to notify consumers at the point of sale . . . that the glyphosate in Roundup has been linked to cancer in humans"). Allowing this case to proceed would violate the court's injunction in *Wheat Growers,* and Home Depot's First Amendment right not to be required to publish "false and misleading" warnings. *Wheat Growers*, 309 F. Supp. 3d at 853.

## E.   Plaintiff Does Not Plead His Fraud Claim with the Particularity Required by Fed. R. Civ. P. 9(b).

Claims alleging violations of the UCL that are grounded in fraud must satisfy Fed. R. Civ. P. 9(b). *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1170 n. 17 (C.D. Cal. 2010); *see also Resnick v. Hyundai Moto America, Inc.*, 2017 WL 6549931, at *12 n.6 (C.D. Cal. Aug. 21, 2017) (applying Rule 9(b) pleading requirements to claim under UCL unfair practices prong).

Plaintiff's Complaint here is grounded in fraud because he alleges "injury resulting from reliance on intentional misrepresentations and omissions." *See Gomez v. Carmax Auto Superstores California, LLC*, No. 2:14-CV-09019-CAS PL, 2015 WL 350219, at *5 (C.D. Cal. Jan. 22, 2015). Specifically, he claims that Home Depot knew that Roundup poses health risks, but failed to warn consumers about those risks. *See, e.g.*, Compl. at ¶ 59 (Defendant was and is aware of the present and substantial danger to consumers while using Roundup . . . and has not alerted consumers of its potential health risks."); *Id.* at ¶ 81 ("Defendant is withholding information that is material and indeed critical to consumers' purchasing decisions.").

In *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009), the Ninth Circuit affirmed the dismissal of plaintiff's complaint based on the failure to plead the specifics regarding alleged misrepresentations, including the "who, what, when,

1    where and how of the misconduct alleged." *See also In re Arris Cable Modem*

2    *Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) ("[A] plaintiff

3    does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly

4    misleading statements but fails to specify which statements the plaintiff actually

5    saw and relied upon"); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL

6    5579529, at *12 (N.D. Cal. Oct. 29, 2019).

7         Plaintiff here likewise fails to plead the circumstances regarding Home

8    Depot's alleged fraudulent actions with any particularity. Plaintiff has not stated

9    when he saw or heard any of Home Depot's advertising or marketing materials

10   regarding Roundup, or whether he saw or heard them at all. *See generally* Compl.

11   He also does not allege which advertisements or marketing materials he relied on in

12   connection with his purchases, or the contents of those materials. *Id*. Because

13   Plaintiff has not satisfied Rule 9(b)'s pleading requirements, his claim fails.

14   **F.    Plaintiff Lacks Article III Standing to Seek Injunctive Relief Because He**
         **Does Not Plead That He Is Likely to Suffer Future Injury.**
15

16        Plaintiff's claim for injunctive relief fails because he admits he is not likely

17   to suffer any future injury. Because injunctive relief applies prospectively, to

18   establish standing for injunctive relief, a plaintiff must show an "actual and

19   imminent" (not "conjectural or hypothetical") threat of suffering a "concrete and

20   particularized" injury. *N.Y. v. San Ramon Valley Unified Sch. Dist.*, No. 17-CV-

21   03906-MMC, 2018 WL 2463243, at *2 (N.D. Cal. June 1, 2018). Stated differently,

22   the threat of future injury must be "certainly impending," and "allegations of

23   *possible* future injury are not sufficient." *Davidson v. Kimberly-Clark Corp.*, 889

24   F.3d 956, 967 (9th Cir. 2018).

25        In *Davidson*, the Ninth Circuit addressed whether a "previously deceived

26   consumer" has standing to seek injunctive relief under CLRA and UCL. 889 F.3d

27   956. There, the plaintiff alleged that she was deceived by a false statement on the

28

defendant's wipes that they were "flushable." *See generally id.* She alleged that she had standing to seek injunctive relief because she "would purchase" such wipes in the future if she could determine "whether the representation 'flushable' is in fact true." *Id.* at 970, 972. The Ninth Circuit found this enough to establish standing because the plaintiff plausibly alleged an "intention to repurchase the product" in the future *and* an inability to determine whether the representation at issue was true going forward, and therefore a likelihood of future injury. *Id.* at 969 n.7, 972.

As this court and the Ninth Circuit have since recognized, however, "while *Davidson* held that plaintiffs '*may* have standing to seek an injunction against false advertising or labeling' in some circumstances, it did not hold that such standing automatically exists for all plaintiffs." *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018). Instead, courts must assess the facts alleged in the complaint to determine whether they alleged an actual threat of future injury. *See id.* This requires an inquiry into (1) whether the complaint alleges an intention to repurchase the product in the future and (2) whether the alleged deception is such that it could have a future effect on the plaintiff. *See id.*

### 1. Plaintiff Fails to Allege an Intention to Purchase Roundup in the Future.

If a plaintiff does not allege that he or she intends to purchase the product in the future, this defeats standing. *Cordes*, 2018 WL 6714823, at *4 (plaintiff lacked standing to seek injunctive relief given the "absence of any allegations about Plaintiff's future intentions with regard to the Product."). This result follows from *Davidson*, which relied on the plaintiff's stated desire to repurchase the product as the basis to distinguish cases that had found standing lacking. 889 F.3d at 969 n.7. Indeed, since *Davidson*, the Ninth Circuit has twice found that plaintiffs lacked standing where they admitted, or the complaint showed, that they would not purchase the product in the future. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F.

App'x 590, 591 (9th Cir. 2018); *Min Shook Shin v. Umeken USA, Inc.*, 773 F. App'x 373, at *1 (9th Cir. June 3, 2019).

Here, Plaintiff does not allege that he has any future intention to buy Roundup. To the contrary, he admits that, if he had known "the carcinogenic properties" of glyphosate, he "would not have purchased it." Compl. ¶ 63; *see also id.* ¶ 88. Thus, Plaintiff not only fails to allege that he intends to buy Roundup in the future, he admits that he *would not* do so given his supposed new-found knowledge of glyphosate's carcinogenicity. This admission is fatal to his injunctive relief claim. *Cordes*, 2018 WL 6714823, at *4.

After Home Depot conferred with Plaintiff about its planned motion to dismiss the last iteration of his complaint, Plaintiff added a sentence to his amended complaint stating that he would not purchase Roundup again unless Home Depot "discloses the link to cancer and provides exposure on how to avoid or mitigate exposure to Roundup's health risks." Compl. ¶ 64. This statement does not avoid Plaintiff's standing problem for two reasons. First, Plaintiff does not affirmatively allege that he *would* purchase the product again if Home Depot made such disclosures—only that he will *not* purchase Roundup without such warnings. He continues to allege that he would not purchase Roundup if he knew about its "carcinogenic properties." *Id.* ¶ 88. But Plaintiff's own Complaint confirms that he *does* know about Roundup's supposed carcinogenic properties, and thus the only reasonable inference from the Complaint is that he will not purchase Roundup in the future. Second, and as discussed below, even if Plaintiff had sufficiently alleged a future intention to purchase Roundup, he has not alleged (and cannot allege) any reasonable possibility that he will be deceived in the future.

### 2.    There Is No Plausible Likelihood of Future Injury Given Plaintiff's Allegation that Roundup Is Carcinogenic.

Plaintiff seeks an injunction requiring Home Depot "to notify consumers at the point of sale … that the glyphosate in Roundup has been linked to cancer in

humans." Compl. ¶ 89. But even if Plaintiff plausibly alleged an intention to purchase Roundup in the future (and he does not), there is no reasonable—let alone "certainly impending"—possibility that he will be deceived again in the future about glyphosate's carcinogenicity. This is not a case like *Davidson*, in which the plaintiff plausibly alleged that she would be uncertain in the future whether wipes labeled "flushable" were truly flushable or not. To the contrary, accepting Plaintiff's allegations as true, Plaintiff now *knows* that glyphosate is carcinogenic. He thus has no plausible basis to assert a likelihood of future deception.

In analogous cases, courts have found that plaintiffs lack standing to seek injunctive relief. For example, in *Anthony v. Pharmavite*, the plaintiff alleged that the defendant falsely advertised its biotin supplements as beneficial for "healthy hair, skin, and nails," when in fact "biotin supplements 'are unneeded, superfluous, and will not provide any benefits' to anyone without a biotin deficiency." 2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019). The court granted the defendant's motion to dismiss the plaintiff's claim for injunctive relief. *Id*. The plaintiff's allegation, the court said, was that biotin supplements were not beneficial "as a matter of scientific fact." *Id*. There was thus no risk of future injury to plaintiff—who would now know that biotin supplements were not beneficial regardless of any change in the defendant's advertising or labeling. *Id.*

The same analysis applies here. Plaintiff alleges that, as a matter of scientific fact, glyphosate is carcinogenic, and that the product labeling deceives consumers by omitting a cancer warning. But since Plaintiff says he now knows that glyphosate is carcinogenic, there is no plausible basis for him to assert a likelihood of future deception. Thus, just as in *Pharmavite*, this Court should hold that Plaintiff lacks standing to seek injunctive relief. *See also Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (granting motion to dismiss claim for injunctive relief where plaintiff complained that defendant's

packaging misled him about the weight of product, but complaint made clear that plaintiff now knew "precisely where to find" accurate weight information).

## V.   CONCLUSION

Plaintiff's UCL claim should be dismissed because (1) it is expressly preempted by federal law; (2) it is barred by the doctrine of impossibility preemption; (3) Plaintiff admits that Home Depot did not participate in, control, or adopt the alleged unlawful practices; (4) Plaintiff's claim -- which substantively is a Proposition 65 claim -- is barred by his failure to comply with Proposition 65's notice requirements, and the current statewide injunction preventing the enforcement of a warning for glyphosate; and (5) Plaintiff has not met the heightened pleading standard for fraud under Rule 9(b) of the Federal Rules of Civil Procedure.

In addition, Plaintiff's claim for injunctive relief should be dismissed because he lacks Article III standing to seek injunctive relief.

For all of the foregoing reasons, the Motion should be GRANTED.

Dated:  December 13, 2019      UMBERG ZIPSER LLP


                              s/ Adina W. Stowell
                              Adina W. Stowell
                              Attorneys for Defendant Home Depot U.S.A., Inc.