1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WEEKS, individually and on behalf of all others situated;<br><br>        Plaintiff,<br><br>      vs.<br><br><br>HOME DEPOT U.S.A., INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>       Defendants. | Case No. 2:19-cv-06780<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF MOTION TO DISMISS**<br><br>Date:  January 30, 2020<br>Time: 10:00 a.m.<br>Courtroom: 6D<br><br>Complaint Filed: August 5, 2019<br>Amended Complaint Filed: November 22, 2019 |

# **TABLE OF CONTENTS**

I.  Introduction ............................................................................................ 1

II.  Summary of Relevant Facts .................................................................. 3

III.  Legal Standard ...................................................................................... 6

IV.  The First Amended Complaint Should Not be Dismissed ................... 6

    A.  Plaintiff's claim is not preempted by FIFRA ........................... 6

        1.  Plaintiff's claim does not impose a labeling or packaging
            requirement ...................................................................... 7

        2.  Plaintiff's claim is consistent with FIFRA's requirements .......... 10

    B.  Plaintiff's claims are not barred by the impossibility preemption
        doctrine ................................................................................... 13

    C.  Plaintiff properly states a claim against Home Depot under the
        UCL as a result of Home Depot's direct participation in the
        unfair acts at issue ................................................................. 15

        1.  Defendant's argument is contrary to the broad scope and
            purpose of the UCL .......................................................... 15

        2.  Defendant's argument is contrary to the facts alleged and
            applicable case law .......................................................... 17

    D.  Plaintiff's claim does not implicate Prop. 65 ......................... 19

    E.  Plaintiff satisfies Rule 9(b)'s heightened pleading standard ............. 22

    F.  Plaintiff has Article III standing to seek injunctive relief ................. 23

V.  CONCLUSION ...................................................................................... 24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Target Corp.* (C.D. Cal. March 3, 2014.
   2014 U.S. Dist. LEXIS 15114 ................................................................ 16, 18

*Ansagay v. Dow Agrosciences LLC* (D. Haw. 2015)
   153 F. Supp. 3d 1270 ........................................................................ 11, 13

*Arias v. Dyncorp* (D.D.C. 2007)
   517 F. Supp. 2d 221 ............................................................................. 12

*Bates v. Dow Agrosciences LLC* (2005)
   544 U.S. 431 .............................................................................. 7, 10, 13

*Bell Atl. Corp. v. Twombly* (2007).
   550 U.S. 544 ..................................................................................... 6

*Berg v. Popham* (9th Cir. 2005)
   412 F.3d 1122 ..................................................................................... 6

*Blitz v. Monsanto Co.* (W.D. Wis. 2018)
   317 F. Supp. 3d 1042 ............................................................................ 12

*Bly-Magee v. California* (9th Cir. 2001)
   236 F.3d 1014 ................................................................................... 22

*Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby* (9th Cir. 1992)
   958 F.2d 941 ...................................................................................... 8

*Cippollone v. Liggett Grp. Inc.* (1992)
   505 U.S. 504 ....................................................................................... 9

*City of Los Angeles v. Lyons* (1983)
   461 U.S. 95 ...................................................................................... 24

*Cooper v. Pickett* (9th Cir. 1997)
   137 F.3d 616 ................................................................................. 22, 23

*Cortina v. Goya Foods, Inc.* (S.D. Cal. 2015)
   94 F. Supp. 3d 1174 .............................................................................. 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Davidson v. Kimberly-Clark Corp.* (9th Cir. 2018)
    889 F.3d 956 .................................................................................... 23, 24

*Dorfman v. Nutramax Labs., Inc.* (S.D. Cal. Sept. 23, 2013)
    2013 U.S. Dist. LEXIS 136949 .................................................................. 17

*Erickson v. Pardus* (2007)
    551 U.S. 89 ......................................................................................... 6

*Ferebee v. Chevron Chem. Co.* (D.C. Cir. 1984)
    736 F.2d 1529 ..................................................................................... 12

*Flamingo Indus. (USA) Ltd. v. United States Postal Service* (9th Cir. 2002)
    302 F.3d 985 ....................................................................................... 15

*Giglio v. Monsanto Co.* (S.D. Cal. Apr. 29, 2016)
    2016 U.S. Dist. LEXIS 57504 ........................................................ 11, 12, 13

*Hardeman v. Monsanto Co.* (N.D. Cal. 2016)
    216 F. Supp. 3d 1037 ...................................................................... 10, 12

*Harris v. R.J. Reynolds Vapor Co.* (N.D. Cal. Sept. 30, 2016)
    2016 U.S. Dist. LEXIS 152780 ................................................................. 21

*Herron v. Best Buy Co., Inc.* (E.D. Cal. Feb. 14, 2013)
    924 F. Supp. 2d 1161 ........................................................................... 17

*Hodson v. Mars, Inc.* (9th Cir. 2018)
    891 F.3d 857 ....................................................................................... 16

*In re Arris Cable Modem Consumer Litig.* (N.D. Cal. Jan. 4, 2018)
    5:17-CV-08134-LHK .............................................................................. 22

*In re Hydroxycut Mtg. & Sales Practices Litig.* (S.D. Cal. 2011)
    801 F. Supp. 2d 993 ............................................................................. 18

*In re Roundup Prods. Liab. Litig.*
    364 F. Supp. 3d 1085 ........................................................................... 13

*Jenkins v. McKeithen* (1969)
    395 U.S. 411 ........................................................................................ 6

*Lilly v. Jamba Juice Co.* (N.D. Cal. Mar. 18, 2015)
    2015 U.S. Dist. LEXIS 34498 .................................................................. 24

iii

*Lozano v. AT&T Wireless Servs., Inc.,* (9th Cir. 2007).
    504 F.3d 736 ....................................................................................16

*Medtronic, Inc. v. Lohr* (1996)
    518 U.S. 470 ..........................................................................6, 10, 11

*Merck Sharp & Dohme Corp. v. Albercht* (2019)
    139 S. Ct. 1668 ................................................................................14

*Mills v. Giant of Md., LLC* (D.D.C. 2006).
    441 F. Supp. 2d 104........................................................................11

*Mirzaie v. Monsanto Co.* (C.D. Cal. Jan. 12, 2016)
    2016 U.S. Dist. LEXIS 3816 ..........................................................9

*Miscellaneous Service Workers, etc. v. Philco-Ford Corp.* (9th Cir. 1981)
    661 F.3d 776 ....................................................................................22

*Nat'l Ass'n of Wheat Growers v. Zeise* (E.D. Cal. 2018)
    309 F. Supp. 3d 842....................................................................4, 20

*New York State Pesticide Coalition, Inc. v. Jorling* (2d Cir. 1989)
    874 F.2d 115 ......................................................................................9

*Reid v. Johnson & Johnson* (9th Cir. 2015)
    780 F.3d 952 ..............................................................................13, 14

*Riegel v. Medtronic, Inc.* (2008)
    552 U.S. 312 ....................................................................................11

*Rubio v. Capitol One Bank* (9th Cir. 2010),
    613 F.3d 1195 ..................................................................................15

*Sciortino v. PepsiCo, Inc.* (N.D. Cal. 2015)
    108 F. Supp. 3d 780..................................................................20, 21

*Sheppard v. Monsanto Co.* (D. Haw. June 29, 2016)
    2016 U.S. Dist. LEXIS 84348 ........................................................12

*Soto v. Superior Telecomm'n, Inc.,* (Dec. 15, 2011)
    2011 U.S. Dist. LEXIS 145205 ......................................................17

*Tabler v. Panera LLC* (N.D. Cal. Oct. 29, 2019)
    2019 U.S. Dist. LEXIS 187694 ......................................................23

iv

*Taylor AG Indus. v. Pure-Gro* (9th Cir. 1995)
    54 F.3d 555 .................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2004)
    317 F.3d 1097 ..........................................................................22, 23

*Wuebker v. Wilbur-Ellis Co.* (8th Cir. 2005)
    418 F.3d 883 ................................................................................... 9

*Wyeth v. Levine* (2009)
    555 U.S. 555...........................................................................13, 14

## <u>STATE CASES</u>

*Candelore v. Tinder, Inc.* (2018)
    19 Cal. App. 5th 1138 ...................................................................15

*Cel-Tech Comm, Inc. v. Los Angeles Cellular Tel. Co.* (1999)
    20 Cal. 4th 163 .............................................................................15

*Camacho v. Automobile Club of Southern California* (2006)
    142 Cal. App. 4th 1394.............................................................16, 20

*In re Vaccine Cases* (2005)
    134 Cal. App. 4th 438...................................................................21

*Kearns v. Ford Motor Co.* (9th Cir. 2009).
    567 F.3d 1120 ...............................................................................15

*Lavie v. Procter & Gamble Co.* (2003)
    105 Cal. App. 4th 496...................................................................15

*S. Bay Chevrolet v. General Motors Acceptance Corp.* (1999)
    72 Cal. App. 4th 861....................................................................16

## <u>FEDERAL STATUTES</u>

7 U.S.C. § 136 ...............................................................................7, 10, 12

21 U.S.C. § 301 ....................................................................................11

Fed. R. Civ. P. 9 ..................................................................................22

Fed. R. Civ. P. 12 ...................................................................................14

Fed. R. Civ. P. 15 ...................................................................................15

## STATE STATUTES

Cal. Bus. & Prof. C. §§ 17200 ......................................................1, 5, 15

Cal. Bus. & Prof. C. 17203 ...............................................................16, 19

Cal. Civ. C. § 1750 .................................................................................20

Cal. Code Regs. § 25603.1 .......................................................................8

Cal. Health & Saf. Code § 25249 ...............................................8, 21, 22

## I.    Introduction

This is a case about retailer Home Depot's unfair business practice of selling the herbicide Roundup directly to consumers despite having knowledge that Roundup's active ingredient, glyphosate, has been categorized is a carcinogen.

In 2015 the World Health Organization's International Agency for Research on Cancer (IARC) categorized glyphosate as a Class 2A herbicide, which means it is probably a carcinogen to humans. Additionally, California's Office of Environmental Health Hazard Assessment (OEHHA) listed glyphosate as a chemical known to the State of California to cause cancer. While countries, regions and municipalities around the globe have since banned Roundup, Home Depot has continued selling and promoting Roundup, notwithstanding the absence of any warning about the herbicide's health risks—such as its link to Non-Hodgkin lymphoma in its users—on the product's label. Home Depot chose to continue selling Roundup without providing consumers with any additional information about Roundup's potential health risks (or how to mitigate them) on its store shelves, website or at the point of sale. Accordingly, Plaintiff alleges Home Depot's conduct constitutes unfair business acts or practices under California's "notoriously broad" Unfair Competition Law (UCL), Cal. Bus. & Prof. C. §§ 17200, *et seq*.

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is based on a mischaracterization of Plaintiff's allegations and the case law, and must be denied for the following reasons:

Home Depot has not met is heavy burden to establish Plaintiff's claims are preempted. *First* Plaintiff's UCL claim is equivalent to, and entirely consistent with, Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) misbranding provisions. Moreover, Plaintiff's claims are premised on Home Depot's sale of a product it knows to be carcinogenic without warning consumers at the point of sale. Such warnings would not accompany the product to the end user during the period of use and thus cannot constitute "labeling" under FIFRA. *Second,* the Court should

reject Defendant's theory under the doctrine of impossibility preemption. The Supreme Court has rejected the very arguments Home Depot makes here, most notably because the plain language of FIFRA demonstrates clear congressional intent to preserve States' broad police powers.

Home Depot also argues it is nothing more than a "passive retailer," and that it therefore cannot be held liable for omissions on product labels. But retailers do not enjoy absolute immunity from selling deceptively labeled products as a matter of law; to the contrary—as is the case here—they can be liable if they know about the misrepresentations and continue selling the product anyway. Once Defendant knew Roundup was a potential carcinogen and that its label did nothing to warn consumers, it unquestionably had control over whether or not to continue to sell Roundup, and, if so, whether to provide additional information to its own customers.

Focusing on the injunctive relief sought (rather than the elements of an 'unfair' prong UCL claim), Home Depot also disputes one of the two proposed forms of injunctive relief proposed in the First Amended Complaint (FAC), arguing that such an injunction would violate FIFRA and be false and misleading. But this argument fails because Home Depot is not foreclosed from giving consumers additional information about Roundup on store shelves, on its website and at the point of sale, because such information does not constitute "labeling" under FIFRA. Moreover, the Court has broad discretion to fashion an equitable remedy, and exactly what the remedy looks like need not be decided at the pleadings stage. Ultimately, Defendant's "retailer immunity" arguments go to ultimate factual determinations, leaping over the initial question of whether Plaintiff has stated a plausible claim for relief.

Home Depot also contends Plaintiff's claim is in substance a Proposition 65 case. Defendant is wrong. The FAC contains a single cause of action—violation of the UCL's 'unfair' prong—and expressly states that it does not arise under Proposition 65, nor does it seek to vindicate a right created by Proposition 65. The FAC also asserts a duty to not engage in unfair business practices, which is

2

independent of Proposition 65.

Next, Home Depot contends the FAC is subject to Rule 9(b)'s heightened pleading requirement, and falls short of satisfying it. Regardless of whether Plaintiff's UCL claim is subject to Rule 9(b), the FAC more than meets the standard. Given the strictures of the rule are somewhat relaxed for claims based on fraudulent omissions, and Plaintiff properly identified the "who, what, when, where and how" required by the Ninth Circuit, Defendant's argument fails.

Finally, Home Depot's challenge to Plaintiff's standing to seek injunctive relief also misses the mark. Plaintiff has properly alleged a likelihood of suffering future injury. Specifically, the FAC alleges that Plaintiff may purchase Roundup from Home Depot again if the retailer discloses the link to cancer and provides information on how to avoid or mitigate Roundup's health risks.

The First Amended Complaint sufficiently alleged a plausible claim under the UCL's 'unfair' prong, and Defendant's Motion to Dismiss should be denied in its entirety. Alternatively, Plaintiff seeks leave to amend on any perceived deficiency in his pleading.

## II.   Summary of Relevant Facts

Defendant is a chain of home improvement stores with retail locations throughout the United States, including California. FAC ¶¶ 9, 15. Defendant is engaged in the marketing, distribution, and sale of the herbicide Roundup at its retail locations and on its website. *Id.* at ¶¶ 2, 9, 16.

Roundup's active ingredient is glyphosate. *Id.* at ¶¶ 1, 9, 17. Glyphosate is a nonselective herbicide that inhibits plant growth through interference with the production of essential aromatic amino acids. *Id.* at ¶ 17. It was discovered to be an herbicide in 1970 and was first brought into the market as Roundup by Monsanto Company in 1974. *Id.* Glyphosate is registered with the Environmental Protection Agency ("EPA").

In March 2015, the International Agency for Research on Cancer ("IARC"), an

3

intergovernmental cancer agency within the World Health Organization ("WHO") of the United Nations, was tasked with evaluating the potential carcinogenicity of glyphosate. *Id.* at ¶ 20. The IARC's evaluation was based on a cumulative review of all publicly available and pertinent scientific studies. *Id.* at ¶ 21. This followed decades of studies suggesting glyphosate was linked to cancer in humans. *Id.* at ¶¶ 25-38. The IARC published its findings in July 2015 and classified glyphosate as a Class 2A herbicide, which means it is probably carcinogenic to humans. It concluded non-Hodgkin lymphoma was most associated with glyphosate exposure. *Id.* at ¶¶ 21-22.

Following the IARC's report on glyphosate, many countries, regions, and municipalities throughout the world issued outright bans or restrictions on glyphosate-based herbicides, including Roundup. *Id.* at ¶¶ 39-48. In July 2017, California's Office of Environmental Health Hazard Assessment ("OEHHA") listed glyphosate as a chemical known to the State of California to cause cancer, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65").[1] *Id.* at ¶ 52. In recent years, Roundup has been the subject of litigation in personal injury cases. *Id.* at ¶ 49-51. Three juries have found Roundup likely caused certain individuals to develop cancer. *Id.*

Plaintiff asserts Roundup, as formulated, is carcinogenic and "dangerous to human health." *Id.* at ¶ 2. Roundup contains glyphosate, a chemical known to cause cancer, and adjuvants (specifically, the surfactant POEA (polyoxyethyleneamine)) which "increase[] the toxicity of glyphosate alone." *Id.* at ¶ 38. Roundup should not be sold to consumers absent adequate disclosures of the substantial health risks.

---

[1] As discussed more fully herein, the Eastern District Court of California issued a preliminary injunction precluding OEHHA from enforcing its Proposition 65 warning requirements against glyphosate registrants. *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018). Notably, the court did not rule glyphosate should be removed from the Proposition 65 list as a chemical known to the State of California to cause cancer.

4

Defendant chooses to sell a harmful, carcinogenic product without providing consumers with any additional information on store shelves, website or at the point of sale about the products' potential health risks. *Id.* at ¶¶ 3, 58, 59. While Defendant is not responsible for the labeling of Roundup products, "Defendant is responsible for passing Roundup down the line to consumers by making it available for purchase, and thus plays an integral role in placing Roundup into the stream of commerce." *Id.* at ¶ 57. "[I]nstead of putting its consumers' safety first and removing Roundup from its stores or informing consumers about Roundup's potential health risks, Home Depot has continued selling a potentially deadly product for its own direct financial benefit." *Id.* at ¶ 58. Defendant was and is aware of the present and substantial danger to consumers while using Roundup yet does not inform consumers of the product's potential health risks. *Id.* at ¶ 59.

Plaintiff routinely purchased a Roundup product from a Home Depot store in Ventura County, California. FAC ¶ 60. At the time of purchase, Defendant did not provide Plaintiff with any information regarding the carcinogenic nature of Roundup. *Id.* at ¶ 61. Defendant could have provided such information by displaying it on the shelves where Roundup was sold or at the point of sale. *Id.* at ¶ 62. Had Plaintiff known of the carcinogenic properties of Roundup and its links to cancer, he would not have purchased it. *Id.* at ¶ 63. Plaintiff alleges "he would not purchase Roundup from Defendant again, unless Defendant discloses the link to cancer and provides information on how to avoid or mitigate exposure to Roundup's health risks." *Id.* at ¶ 64.

Plaintiff asserts a single claim under the "unfair" prong of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* Plaintiff alleges Defendant's business practices—which involve selling a harmful, carcinogenic product to consumers without providing any warning as to its risks—have caused a substantial injury to consumers that could not have been reasonably avoided and is not outweighed by any countervailing benefits to consumers or competition. FAC ¶

5

81. Plaintiff seeks injunctive relief in the form of an order (1) "enjoining Defendant[]
from engaging in the unfair business practices . . . in connection with the sale of
Roundup" and (2) "requiring Defendant to notify consumers at the point of sale (for
example, through signage on store shelves and on product webpages) that the
glyphosate in Roundup has been linked to cancer in humans." *Id.* at ¶ 89.
Additionally, Plaintiff seeks an order awarding Plaintiff and the putative class
restitution of the money wrongfully acquired by Defendant from class members by
means of the unfair business practices alleged herein.

## III.   Legal Standard

The purpose of a motion to dismiss is to test the legal sufficiency of the
complaint. When considering such a motion, the factual allegations in the complaint
are assumed true and all reasonable inferences arising therefrom are construed in the
plaintiff's favor. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*per curium*) (citations
and internal quotation marks omitted); *Jenkins v. McKeithen,* 395 U.S. 411, 421
(1969); *Berg v. Popham,* 412 F.3d 1122, 1125 (9th Cir. 2005). At this stage of the
proceedings, all that is required of Plaintiff is that the FAC "nudge[s] his claims across
the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,
570 (2007). Home Depot largely ignores this standard. Rather than addressing
Plaintiff's allegations, Home Depot construes disputed facts in its favor and makes
factual assertions beyond those alleged in the FAC. As set forth below, Plaintiff has
satisfied this standard, and Home Depot's motion should be denied.

## IV.   The First Amended Complaint Should Not be Dismissed.

### A.   Plaintiff's claim is not preempted by FIFRA.

Defendant cannot meet its considerable burden of establishing Plaintiff's claim
is expressly preempted by FIFRA. *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174,
1186 (S.D. Cal. 2015) (the party who asserts preemption bears the burden of so
demonstrating). To satisfy this burden, Defendant must establish FIFRA's preemption
of Plaintiff's claims is "the clear and manifest purpose of Congress." *Medtronic, Inc.*

6

*v. Lohr*, 518 U.S. 470, 485 (1996). FIFRA's preemption provision is fairly narrow in scope and only preempts state requirements for labeling or packaging that are "in addition to or different from" those required under FIFRA. 7 U.S.C. § 136v(b). States are permitted to impose their own labeling requirements, as long as they are "equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005).

Defendant argues the FAC is expressly preempted because the EPA registered glyphosate and approved the Roundup label without a cancer warning and Plaintiff's demand for a cancer warning constitutes a labeling requirement "in addition to or different from" the FIFRA's requirements. Defendants' argument should fail because (1) Plaintiff's claim does not impose a requirement for labeling or packaging and (2) Plaintiff's claim is parallel to FIFRA requirements.

### 1. Plaintiff's claim does not impose a labeling or packaging requirement.

Defendant mischaracterizes the FAC as imposing a labeling or packaging requirement. In reality, Plaintiff alleges Defendant sells Roundup at its retail locations and on its website despite knowing that Roundup poses potential health risks. FAC ¶¶9, 15, 57-59, 80-86. Plaintiff further contends that, in selling Roundup, Defendant does nothing to inform consumers of these risks, and profits handsomely from this activity. *Id.* Plaintiff claims this conduct constitutes an unfair business practice under the UCL, and seeks injunctive relief and restitution. *Id.* at ¶¶78-90. Contrary to Defendant's contention, the injunctive relief Plaintiff describes in the FAC is simply "an order of this Court enjoining Defendant[] from engaging in the unfair business practices alleged herein in connection with the sale of Roundup" *and* an order "requiring Defendant to notify consumers at the point of sale (for example, through signage on store shelves and on product webpages) that the glyphosate in Roundup has been linked to cancer in humans." FAC ¶89. [2]

_____

[2] While Plaintiff may include allegations suggesting potential injunctive relief, fashioning injunctive relief after a finding of liability is within the Court's sole and

7

While the FAC does include as *one* potential remedy an order requiring Defendant to provide consumers with a "point of purchase shelf-warning" as to Roundup's cancer risk, such a warning would not appear on the "packaging," nor would it constitute "labeling" as defined under FIFRA. FIFRA defines "labeling" as the material intended to accompany the herbicide through the streams of commerce. *See* 7 U.S.C. § 136(p)(2) (the term "labeling" means "all labels and all other written, printed, or graphic matter . . . accompanying the pesticide or device at any time; or to which reference is made on the label or in literature accompanying the pesticide or device . . . ."). Though broadly phrased, this definition does not encompass *all* communications made in connection with the sale or marketing of an herbicide product. Point-of-sale warnings which are "not attached to the immediate container of a product and will not accompany the product during the period of use"—such as the kind sought in Plaintiff's FAC—are specifically excluded from "labeling" as it is defined under FIFRA. *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby* (9th Cir. 1992) 958 F.2d 941, 946.

The Ninth Circuit in *Allenby* specifically held FIFRA does not preempt point-of-sale warnings on products containing carcinogens as mandated by California's Proposition 65.[3] *Id.* In its reasoning, the court observed:

> FIFRA's definition of labeling cannot encompass every type of written material accompanying the pesticide at any time. If this were true, then price stickers affixed to shelves, sheets indicating that a product is on sale, and even the logo on the exterminator's hat would all constitute impermissible labeling.

*Id.* The Second Circuit reached the same conclusion in *New York State Pesticide*

_____

broad discretion.

[3] Proposition 65 provides: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." Cal. Health & Saf. C. § 25249.6. Manufacturers of consumer products can comply with Proposition 65 by (1) placing the warning directly on product labels; (2) displaying the warning on signs at the retail outlet where the products are sold, known as the "point of sale"; or (3) sending the warning to the news media. Cal. Code Regs., tit. 27, § 25603.1.

*Coalition, Inc. v. Jorling*, 874 F.2d 115 (2d Cir. 1989), where it refused to construe the term "labeling" in § 136v(b) to include warnings given to customers who contract for pesticide services or public notification of pesticide applications. Because a construction of "labeling" to include anything that could be said to "accompany" a pesticide would literally include "the logo on the applicator's hat and the license plate on the vehicle in which the pesticide is transported," the court limited that definition to material attached to the immediate container or otherwise expected to remain with the pesticide during the period of use. *Id*. at 119-20 (quoting letter from EPA's general counsel). Pursuant to *Allenby* and *Jorling*, Plaintiff's claims are not preempted because they are premised on Defendant's sale of a product it knows to be carcinogenic without warning consumers at the point of sale regarding Roundup's carcinogenic nature. Such warnings would not accompany the product to the end user during the period of use and thus cannot constitute "labeling" under FIFRA.

Defendant relies on distinguishable case law to argue Plaintiffs' claim is nonetheless premised on a requirement for labeling or packaging. But unlike Defendant's authority, Plaintiff's claim is directed toward the retailer (Home Depot), not the manufacturer (Monsanto), and does not compel a change to Roundup's actual packaging or labeling. *Compare with Mirzaie v. Monsanto Co*., No. 15-04361, 2016 U.S. Dist. LEXIS 3816 (C.D. Cal. Jan. 12, 2016) (plaintiff's claims against manufacturer seeking label alteration preempted); *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 561 (9th Cir. 1995) (plaintiff's claims seeking injunctive relief against the manufacturer preempted); *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (FIFRA preempts claims which require "*manufacturers* to label or package [their product] in a particular way") (emphasis added). Furthermore, *Cippollone v. Liggett Grp. Inc.*, 505 U.S. 504 (1992) is wholly irrelevant to FIFRA preemption, as it pertains instead to the preemptive effect of the Public Health Cigarette Smoking Act of 1969, which is not at issue here. Plaintiff's FAC does not impose a labeling or

packaging requirement against the manufacturer, and thus, is not subject to FIFRA's preemption provision.

### 2. Plaintiff's claim is consistent with FIFRA's requirements.

Even assuming Plaintiff's FAC posed a challenge to Roundup's product labeling, it would not be preempted by § 136v(b) as it is equivalent to, and fully consistent with, FIFRA's misbranding provisions. *See e.g., Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037, 1038 (N.D. Cal. 2016) ("[t]o the extent Hardeman's failure-to-warn claims attack Roundup's product labeling, they are consistent with FIFRA"). State tort claims which "enforce a federal requirement '[do] not impose a requirement that is different from or in addition to, requirements under federal law.'" *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 448 (2005) (*quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 513 (1996) (J. O'Connor, concurring in part and dissenting in part)). Plaintiff's UCL claim, which is based on Home Depot's failure to inform consumers regarding Roundup's carcinogenic components (*see* FAC ¶¶ 80-86), parallels requirements imposed by FIFRA's misbranding prohibitions.

FIFRA prohibits the sale or distribution of any pesticide that is misbranded. 7 U.S.C. § 136j(a)(1)(E). An herbicide is misbranded if:

> **(F)** the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment; [or]

> **(G)** the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment[.]

7 U.S.C. § 136(q)(1)(F)-(G). Plaintiff's UCL claim asserts Defendant violated the UCL's 'unfair' prong because it sold Roundup with knowledge of its health risks without informing consumers of those risks (including the product's potentially

carcinogenic nature). This would constitute misbranding under § 136(q)(1)(F) and (G). Because Plaintiff's claim is consistent with and indeed equivalent to FIFRA's misbranding provision, preemption is not appropriate. *Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504, at *6 (S.D. Cal. Apr. 29, 2016) ("Failure to include a warning regarding known carcinogenic properties of a pesticide would constitute misbranding under § 136(q)(1)(G). Therefore . . . Plaintiff's failure to warn claims . . . are not preempted.").

Defendant argues Plaintiff's claim is nonetheless preempted because EPA has registered glyphosate and approved Roundup's product labeling. *See* Motion to Dismiss ("MTD") at 10:1-6 ("[W]hen registering the glyphosate products at issue here, the EPA explicitly addressed the very labeling question Plaintiff raises, concluded that the absence of a cancer warning does not render the products misbranded, and required the use of a label that has no cancer warning."). In support of this argument, Defendant relies on cases construing the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* ("FDCA"), *see* MTD at 10:7-23 (*citing Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) *and Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996))—but the FDCA is not at issue here and has no bearing on FIFRA preemption. The "scope of FDCA's preemption clause is much broader than FIFRA's, prohibiting 'any' requirements as opposed to merely requirements 'for labeling or packing.'" *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006). And "[t]he statutory scheme in the FDCA does not contemplate FIFRA's level of state participation in regulating products within a federal statute's purview." *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1284 (D. Haw. 2015). Defendant's reliance on these cases is misplaced, irrelevant, and should be disregarded.

In any event, Defendant ignores the overwhelming authority that provides an herbicide's label can be registered by the EPA *yet still violate* FIFRA by failing to provide adequate warnings. 7 U.S.C. §§ 136j(a)(1)(E); *Bates*, 544 U.S. at 440 ("Because it is unlawful under the statute to sell a pesticide that is registered but

11

nevertheless misbranded, manufacturers have a continuing obligation to adhere to FIFRA's labeling requirements."). Indeed, FIFRA expressly provides that registration does not provide a defense to a violation of the statute. 7 U.S.C. § 136a(f)(2) ("[i]n no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter"); *Sheppard v. Monsanto Co*., No. 16-00043 JMS-RLP, 2016 U.S. Dist. LEXIS 84348, at *19 (D. Haw. June 29, 2016) (same); *Giglio v. Monsanto Co*., No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504, at *5 (S.D. Cal. Apr. 29, 2016) (same). Thus, "the mere fact that the EPA has approved a product label does not prevent a jury from finding that that same label violates FIFRA." *Hardemon*, 216 F. Supp. 3d at 1038; *Blitz v. Monsanto Co*., 317 F. Supp. 3d 1042, 1050 (W.D. Wis. 2018) ("to the extent that defendant is arguing that the EPA's registration of glyphosate and approval of the Roundup label carry any preemptive force, defendant is simply mistaken").

Defendant argues the EPA has consistently determined glyphosate is not a carcinogen, citing recent assessments evaluating the carcinogenic potential of glyphosate and the EPA's August 2019 letter to glyphosate registrants. But classifications by the EPA do not constitute clear and manifest statements of Congressional intent that herbicides cannot be challenged as unsafe under state tort law. *Ferebee v. Chevron Chem. Co*., 736 F.2d 1529, 1540 (D.C. Cir. 1984) ("The fact that EPA has determined that Chevron's label is adequate *for purposes of FIFRA* does not compel a jury to find that the label is also adequate for purposes of state tort law as well."); *Arias v. Dyncorp*, 517 F. Supp. 2d 221, 229 (D.D.C. 2007) (State Department's statements regarding safety of herbicide "does not establish a clear and manifest statement by Congress" that it may not be challenged as unsafe under state law). Courts have routinely declined "to afford preemptive effect to agency actions that do not carry the force of law under *Mead* and its progeny." *Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015).

Moreover, Defendant's reliance upon EPA "safety" findings is irrelevant and

improperly based on extraneous matters that should be disregarded by the Court pursuant to Fed. R. Civ. P. 12(d). "[A] motion to dismiss is not the proper vehicle to delve into the import of EPA classifications or what EPA representatives have said in the past, what information they were relying on, and what effect their statements have on the issues before the Court." *Giglio v. Monsanto Co*., No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504, at *7 (S.D. Cal. Apr. 29, 2016).

### B. Plaintiff's claims are not barred by the impossibility preemption doctrine.

Defendant further argues Plaintiff's claim is barred under the doctrine of impossibility preemption, relying on several cases involving the FDCA. The crux of Defendant's argument is that it cannot comply with both state and federal requirements, because the so-called "cancer warning" in Plaintiff's FAC is at odds with EPA's findings that glyphosate poses no cancer risk to humans. Defendant's argument is without merit because the impossibility preemption doctrine does not apply in the context of FIFRA, and even if it did, Defendant fails to satisfy the "clear evidence" standard under *Wyeth v. Levine*, 555 U.S. 555, 568 (2009).

As an initial matter, Defendant's impossibility preemption argument was considered in *Bates* and ultimately rejected by the Supreme Court, which declined to find an implied preemption doctrine beyond FIFRA's express preemption provision. Both parties in *Bates* addressed impossibility preemption and "the *Bates* Court rejected impossibility preemption *sub silentio*." *Ansagay v. Dow Agrosciences LLC*, 153 F. Supp. 3d 1270, 1281 (D. Haw. 2015); *see also In re Roundup Prods. Liab. Litig*., 364 F. Supp. 3d 1085, 1088 ("Although the decision [in *Bates*] centered on the scope of FIFRA's express preemption provision, the implied preemption question was also before the court."). As Justice Thomas noted, "[the *Bates*] decision thus comports with this Court's increasing reluctance to expand federal statutes beyond their terms *through doctrines of implied pre-emption*." *Bates*, 544 U.S. at 459 (J. Thomas, concurring in judgment and dissenting in part) (emphasis added). Defendant should

not be able to invoke a doctrine that has been not been recognized (by any court) in the context of FIFRA.

Furthermore, even assuming the doctrine of impossibility preemption applies, Defendant cannot satisfy the "clear evidence" standard under *Wyeth v. Levine*, 555 U.S. 555, 568 (2009). To meet this standard, Defendant would have to demonstrate the EPA (1) was "fully informed" of the justifications for including a cancer warning on Roundup products and (2) determined it would not approve such a warning. *See Merck Sharp & Dohme Corp. v. Albercht*, 139 S. Ct. 1668, 1676, 1678 (2019). Defendant relies on the EPA's scientific reviews of glyphosate's purported safety and the EPA's August 2019 letter to glyphosate registrants to suggest the EPA was fully informed of Roundup's potential carcinogenicity and would not approve a cancer warning on Roundup products. As discussed, these conclusions lack preemptive effect and fall outside the four corners of the complaint. *See Reid*, 780 F.3d at 964; Fed. R. Civ. Proc. 12(d). But in any event, Defendant's reliance on these materials is misguided. The EPA's evaluation of glyphosate is *not the same as an evaluation of the Roundup product itself*. In fact, the August 2019 letter on its face expressly concerns solely "product labels where the only basis of the warning is glyphosate." Stowell Decl. Ex. B. Because the EPA is not "fully informed" as to *Roundup's* potential carcinogenicity and has not reached a determination as to *Roundup's* carcinogenicity in particular, Defendant cannot satisfy the "clear evidence" standard and the impossibility preemption doctrine is not availing.

In the event Plaintiff's claim is dismissed on the basis of impossibility preemption, Plaintiff respectfully seeks leave to amend the complaint to include allegations regarding the genotoxic properties of the surfactants contained in Roundup.[4] For example, the Roundup formulation contains surfactants, most notably polyethoxylated ethyl amine ("POEA"), which carries added foreseeable risks beyond

---

[4] *See* Fed. R. Civ. P. 15(a)(2) (a court "should freely give leave [to amend] when justice so requires.").

those associated with the single active ingredient that the EPA considered in its letter, or in its registration decisions.

### C. Plaintiff properly states a claim against Home Depot under the UCL as a result of Home Depot's direct participation in the unfair acts at issue.

Defendant contends that because it did not manufacture Roundup and has no control over Roundup's label, it cannot be liable under the UCL as a matter of law. Defendant is wrong. The notion that it is automatically immune from liability simply because it did not create the Roundup label is belied by the UCL, relevant case law, and the facts, including those set forth in the FAC.

#### 1. Defendant's argument is contrary to the broad scope and purpose of the UCL.

The UCL is a law enforcement tool designed to protect consumers and deter and punish wrongdoing. *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 503 (2003). The statute "prohibits 'unfair competition,' defined as 'any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." *Rubio v. Capitol One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010), *cert denied,* 563 U.S. 918 (2011) (quoting Cal. Bus. & Prof. C. §17200). Each type of wrongful conduct is recognized as distinct from the others and is independently actionable. *Cel-Tech Comm, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). Here, Plaintiff's claim is based on the 'unlawful' prong. FAC ¶¶78-90.

"The standard for finding an 'unfair' practice in a consumer action is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Candelore v. Tinder, Inc*., 19 Cal. App. 5th 1138 (2018) (internal quotations omitted). *See also Flamingo Indus. (USA) Ltd. v. United States Postal Service,* 302 F.3d 985, *rev'd on other grounds* (9th Cir. 2002) (UCL "is a notoriously broad statute"). There is no definition of an 'unlawful' business practice under the UCL in the consumer context, but courts use one of three tests to determine whether conduct is unfair under the UCL: (1) the **balancing test** set forth in *S. Bay*

*Chevrolet v. General Motors Acceptance Corp.,* 72 Cal. App. 4th 861 (1999), which weighs "the practice's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer."; (2) the **tethering test** set forth in *Cel-Tech,* 20 Cal. 4th at 184, which defines 'unfair' to mean, in relevant part, conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition"; and, (3) the **"FTC Test"** set forth in *Camacho v. Automobile Club of Southern California,* 142 Cal. App. 4th 1394 (2006), which considers whether there is a substantial consumer injury that is not outweighed by any countervailing benefits to consumers or competition, and which could not reasonably have been avoided by the consumers themselves.[5] "[A]dopting one standard does not necessitate rejection of the other." *Lozano v. AT&T Wireless Servs.,* 504 F.3d 718, 736 (9th Cir. 2007).

Though Defendant's motion does not evaluate Plaintiff's claims using any test, the FAC properly alleges Defendant's conduct is unfair under all three. FAC ¶¶ 81-83 (alleging, for example, that Home Depot's conduct has caused a substantial injury to consumers that could not have been reasonably avoided and is not outweighed by any countervailing benefits to consumers or competition).

Finally, it is well established that the UCL "in no way limit[s] liability to a particular category of defendants." *Adams v. Target Corp.*, Case No. 13-5944-GHK (PJWx), 2014 U.S. Dist. LEXIS 15114, *14 (C.D. Cal. March 3, 2014. Cal. Bus. & Prof. C. §17203 ("[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction").

### 2. Defendant's argument is contrary to the facts alleged and applicable case law.

Defendant's argument that it is "nothing more than a passive retailer" and therefore cannot be held liable under the UCL as a matter of law is unsupported by

---

[5] *See also Hodson v. Mars, Inc.,* 891 F.3d 857, 865 (9th Cir. 2018) (discussing the definition of 'unfair' as it relates to conduct against consumers).

any authority and ignores Plaintiff's factual allegations.

As an initial matter, contrary to Defendant's assertion, Plaintiff's legal theory in no way involves Home Depot being vicariously liable or somehow responsible for the information contained on the Roundup labels. *See* MTD at 13. While Plaintiff *does* allege Defendant is not involved in the manufacture and design of the Roundup products and did not control the information on the label (FAC ¶¶ 3, 57), Plaintiff goes on to allege that Defendant is *directly liable* under the UCL because it knew Roundup posed a health risk to consumers yet continued to sell it (without warning consumers on its store shelves, website or at the point of sale) and reaped profits as a result of that activity. FAC ¶¶ 3, 4, 57-62, 80-86.

It is well settled that a retailer of a third party's goods may be liable under the UCL, even where the retailer is not the originator or creator of the unlawful practices. *See Dorfman v. Nutramax Labs., Inc.*, 2013 U.S. Dist. LEXIS 136949 (S.D. Cal. Sept. 23, 2013) (Wal-Mart and Rite-Aid could be subject to UCL liability for marketing and selling products deceptively packaged by manufacturer); *Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. Feb. 14, 2013) (action may proceed against manufacturer and retailer regarding misrepresentations by retailer about laptop battery life)[6]; *Soto v. Superior Telecomm'n, Inc.*, 2011 U.S. Dist. LEXIS 145205 (Dec. 15, 2011) (certifying consumer class in UCL action against retail seller of prepaid calling cards).

The Hon. George H. King's opinion in *Adams* is instructive. There, the plaintiff alleged the retailer Target sold Banzai-brand inflatable pools that allegedly used deceptive images on their product packaging. *Id.* at *2. In moving to dismiss, Target argued the plaintiff cannot allege Target was sufficiently involved in the deceptive images on the pools' packaging. *Id.* at 12. The Court found the argument was

---

[6] Defendant cites to *Herron* in support of its motion (MTD at 15), but the factors in *Herron* actually demonstrate the validity of Plaintiff's claims. Unlike the manufacturer in *Herron* (who merely did not correct or police Best Buy's representations regarding its product), Home Depot here has control over which products it chooses to sell, and how to encourage or promote those sales.

meritless given the complaint alleged Target received notice of the deception and continued selling the deceptively-labeled pools thereafter. *Id*. at *2. Here, like Target, Home Depot was aware of Roundup's danger to consumers. FAC ¶59. "Once it had this knowledge, it unquestionably had control over whether or not to continue to sell the [Roundup] products." *Adams* at 2014 U.S. Dist. LEXIS 15114, *13. Indeed, Defendant's "decision to continue to sell the products may raise an inference of participation or in adoption of the deceptive practices." *Id.*

*In re Hydroxycut Mtg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011), on which Defendant heavily relies, is distinguishable on its facts. There, consumers sued the manufacturer of a dietary supplement and retailers who sold the supplement, alleging the deceptive marketing and advertising regarding the supplement's efficacy violated various consumer protection statutes. The court dismissed (with leave to amend) the plaintiffs' claims against the retailer defendants because the plaintiffs failed to allege facts establishing they "somehow participated in, controlled, or adopted the deceptive advertising." *Id*. at 1012-103.

In contrast, here, Plaintiff alleges Home Depot "participated in" or "controlled" the challenged conduct—selling Roundup despite its knowledge it is potentially carcinogenic. *See, e.g.*, FAC ¶57 ("Defendant is responsible for passing Roundup down the line to consumers by making it available for purchase, and thus plays an integral role in placing Roundup into the stream of commerce"); ¶58 ("instead of putting its consumers' safety first and removing Roundup from its stores or informing consumers about Roundup's potential health risks, Home Depot has continued selling a potentially deadly product for its own direct financial benefit."); ¶59 (Defendant "has not alerted consumers of [Roundup's] potential health risks"); ¶84 (Defendant has a "position in the marketplace to exert pressure on the makers of Roundup to include appropriate health and safety warnings on its labels"); ¶85 ("Defendant is in a position to protect consumers from the risks of Roundup by simply providing a point of purchase shelf warning").

Defendant further contends Plaintiff fails to allege Defendant has control over the information on store shelves or at the point of sale, but such control is implied by the above allegations. Defendant reiterates its argument that EPA-regulated "labeling" includes shelf tags and information provided at the point of sale. MTD at 15. Defendant is wrong. As explained in section IV(A) above, information which is "not attached to the immediate container of a product and will not accompany the product during the period of use"—such as the kind sought in Plaintiff's FAC—are specifically excluded from "labeling" as it is defined under FIFRA.

As also explained above, the "cancer warning Plaintiff seeks" is but one suggestion for injunctive relief; Plaintiff also seeks a broader injunction to enjoin Defendant from "engaging in the unfair business practices alleged herein in connection with the sale of Roundup." FAC ¶89. Fashioning equitable relief is ultimately within the Court's discretion, after liability is established. *See* Cal. Bus. & Prof. C. 17203. ("The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition").

Thus, Home Depot's arguments that it enjoys absolute immunity as a retailer and that the FAC should be evaluated based on the relief proposed in the pleadings (rather than the merits of his claims) must be rejected at this point in the litigation.

**D. Plaintiff's claim does not implicate Prop. 65.**

Plaintiff's FAC is premised on Defendant's violation of the "unfair" prong of the UCL—not on Proposition 65 as Defendant contends. Plaintiff has stated a claim under the "unfair" prong by alleging Defendant's business practices—which involve selling a harmful, potentially carcinogenic product to consumers without providing any warning as to its risks—have caused a substantial injury to consumers that could not have been reasonably avoided and is not outweighed by any countervailing benefits to consumers or competition. *See* FAC ¶ 81; *see Camacho v. Automobile Club of Southern California* 142 Cal. App. 4th 1394, 1403–1405 (2006) (defining

19

"unfair" business practices under the UCL). Plaintiff's FAC "does not arise under Proposition 65, nor does it seek to vindicate a right created by Proposition 65." FAC ¶56.

Defendant nevertheless insists Plaintiff's UCL claim arises under Proposition 65 "because [Plaintiff] alleges Defendant is liable for not issuing a cancer warning for Roundup's active ingredient (glyphosate)." MTD at 16. Defendant argues Plaintiff's claim is thus barred because (1) Plaintiff failed to provide statutory notice pursuant to Cal. Health & Safety C. section 25249.7(d)(1) and (2) Proposition 65 claims based on the absence of a cancer warning for glyphosate are enjoined by the preliminary injunction issued in *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842 (E.D. Cal. 2018). Defendant's arguments are without merit. Plaintiff's FAC expressly disclaims any violation of Proposition 65 and asserts Home Depot has an obligation to inform consumers that is independent of Proposition 65's requirements. It is therefore is not subject to Proposition 65's statutory notice requirement nor the *Wheat Growers* injunction.

The relevant question is whether Plaintiff's FAC is "entirely derivative of an unspoken Proposition 65 violation, or whether [it] assert[s] claims independent of Proposition 65." *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 792 (N.D. Cal. 2015). The *Sciortino* court addressed this question in the context of two complaints brought under the Consumer Legal Remedies Act, Cal. Civ. C. § 1750, *et seq.* (the "CLRA") and the UCL, based on Pepsi's alleged failure to disclose the presence of 4-MEI, a Proposition 65-listed carcinogen, in its beverages. *Id.* The "Ibusuki Complaint" was found to "plead around Proposition 65" because his claims under the CLRA and UCL "referred to no other alleged misstatements other than the failure to warn under Proposition 65." *Id.* at 793. The court dismissed the Ibusuki Complaint for failure to comply with Proposition 65's statutory notice requirement. The "Hall Complaint," by contrast, was found *not* to plead around Proposition 65, because it "expressly disclaimed any Proposition 65 violation" and alleged misrepresentations

that were "not literally based upon a violation of Proposition 65." *Id*. at 794. Specifically, Hall alleged that "Pepsi should have disclosed the presence of 4-MeI in the Pepsi Beverages irrespective of Proposition 65, including e.g., in its advertising and public statements." *Id*. Because Hall asserted a legal duty independent of the requirements of Proposition 65, the court declined to dismiss her complaint. *Id*.

Here, the FAC is akin to the Hall Complaint in *Sciortino*. Plaintiff expressly disclaims any Proposition 65 violation in his FAC and does not assert a UCL "unlawful" claim predicated on a Proposition 65 violation. *See* FAC ¶ 56. This fact alone makes this case distinguishable from *In re Vaccine Cases*, 134 Cal. App. 4th 438 (2005), where the plaintiff's UCL claim was exclusively based on the defendants' violations of Proposition 65. Moreover, Plaintiff's claim is "not literally based upon a violation of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 794. Plaintiff alleges could have stopped selling Roundup or, in continuing to distribute the product, Defendant should tell consumers that Roundup *itself* is carcinogenic (FAC ¶ 81) not merely that it contains a chemical known to the State of California to cause cancer (*see* Cal. Health & Saf. C. § 25249.6). As discussed herein, the Roundup formulation contains surfactants, like POEA, which are known to change "human cell permeability and increase[] the toxicity of glyphosate." FAC ¶ 38. Thus, it is the Roundup *formulation*, not just the inclusion of glyphosate alone, that renders the product carcinogenic.

For these reasons, the FAC asserts a duty to disclose that is independent of Proposition 65. *See Harris v. R.J. Reynolds Vapor Co*., No. 15-cv-04075-JD, 2016 U.S. Dist. LEXIS 152780, at *6 (N.D. Cal. Sept. 30, 2016) ("a duty to disclose a Proposition 65 listed chemical may arise independent of Proposition 65 if a plaintiff identifies a legal duty beyond the omission of the required health-warning label."). Because Plaintiff's FAC is "not wholly derivative of a Proposition 65 warning violation, . . . [Plaintiff] did not 'commence' an action 'pursuant to' Proposition 65" and is not bound by its statutory notice requirement. *Sciortino*, 108 F. Supp. 3d at

794; Cal. Health & Safe. C. § 25249.7(d)(1). Furthermore, the FAC is not enjoined by the injunction set forth in *Wheat Growers*, as it does not seek to enforce Proposition 65.

### E.  Plaintiff satisfies Rule 9(b)'s heightened pleading standard.

Claims grounded in fraud or mistake are subject to Rule 9(b)'s requirement that a complaint "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). To meet this prerequisite, allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and internal quotation marks omitted).  Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2004) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997).

The strictures of Rule 9(b) are somewhat relaxed for claims based on fraudulent omission or concealment, rather than affirmative misrepresentations or deceptive conduct, because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Miscellaneous Service Workers, etc. v. Philco-Ford Corp., WDL Div.,* 661 F.3d 776, 782 (9th Cir. 1981). The cases cited by Home Depot are, therefore, distinguishable, as the plaintiffs in each of those cases challenge express statements made in various formats and locations without alleging which ones they actually saw or relied on. MTD at 20 (citing *In re Arris Cable Modem Consumer Litig.*, No. 5:17-CV-08134-LHK, 2018 288085 (N.D. Cal. Jan. 4, 2018) (plaintiff challenged "a range of statements" made on Arris' website, Amazon.com and product's packaging without specifying which ones plaintiff saw or relied on); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 U.S. Dist. LEXIS 187694 (N.D. Cal. Oct. 29, 2019) (plaintiff challenged representations on "bags, signs, and labels throughout Panera's physical locations"

22

without identifying which statements she actually relied on)). The FAC "can succeed without the same level of specificity required by a normal fraud claim." *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiff's complaint does not allege Home Depot engaged in fraudulent conduct, nor is it an essential element of his UCL claim. *See Vess,* 317 F.3d at 1104 (reversing dismissal of UCL claims under 9(b) because those claims did not solely depend on averments of fraud). Nonetheless, the FAC easily satisfies the heightened pleading requirements applicable to omission-based claims. Specifically, Plaintiff has identified the "*who*" (Home Depot); the "*what*" (Defendant's knowledge about Roundup's potential health risks and selling it without informing consumers of the risks, and reaping profits based on this activity) (FAC ¶¶9, 15, 57-59, 80-86); the "*when*" (since at least 2015—when the IARC classified Roundup as a Class 2A herbicide and other countries began banning glyhphosate-based herbicides—to the present day) (FAC ¶¶63, 20-24, 39-48); the "*where*" (Home Depot should have placed warnings on store shelves and/or at the point of sale) (FAC ¶¶63, 85); and the "*how*" (had Plaintiff known of Roundup's carcinogenic properties, he would not have purchased it from Home Depot) (FAC ¶¶63, 87-88). This is more than sufficient to give Home Depot fair notice of the particular misconduct forming the basis of Plaintiff's claims, and, thus, satisfies the standards set forth in Rule 9(b).

**F.  Plaintiff has Article III standing to seek injunctive relief.**

Defendant contends Plaintiff lacks standing to seek injunctive relief because he does "not allege that he has any future intention to buy Roundup" and "has no plausible basis to assert a likelihood of future deception." Defendant's argument misreads the FAC and *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).

*Davidson's* holds that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original

purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm." *Id*. at 969. "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id. Davidson* illustrates this point with the following example: "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.*

Here, Plaintiff alleges he may purchase from Home Depot Roundup again if "Defendant discloses the link to cancer and provides information on how to avoid or mitigate to Roundup's health risks." FAC ¶ 64. This allegation demonstrates Plaintiff intends to purchase Roundup in the future. *Lilly v. Jamba Juice Co*., No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, at *13 (N.D. Cal. Mar. 18, 2015) ("a willingness to consider a future purchase is sufficient."). Assuming Defendant *did* disclose Roundup's known cancer risks and provided information on how to mitigate the risk of exposure, Plaintiff may still be deceived if Plaintiff "reasonably, but incorrectly" trusted these additional disclosures and those disclosures turned out to be inadequate. This would demonstrate "'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Plaintiff has alleged a likelihood of purchasing Roundup from Home Depot in the future, and may again fall victim to Home Depot's unfair business practices. Plaintiff has, therefore, met the threshold for demonstrating Article III standing for injunctive relief.

## V.   CONCLUSION

Based on the forgoing, Home Depot's motion should be denied in its entirety. In the alternative, Plaintiff respectfully requests leave to file a Second Amended Complaint to correct or clarify any perceived deficiencies.

24

Dated: January 9, 2020                    Respectfully submitted,

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

*Counsel for Plaintiff and the Proposed Class*