UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WEEKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>Defendant. | Case No. CV 19-6780 FMO (ASx)<br><br>**ORDER RE: MOTION TO DISMISS** |

Having reviewed and considered the briefing filed with respect to defendant Home Depot U.S.A., Inc.'s ("defendant") Motion to Dismiss First Amended Class Action Complaint ("FAC") (Dkt. 38, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

"Roundup is sold at Home Depot retail locations throughout the United States, including California, and on Home Depot's website." (Dkt. 18, FAC at ¶ 16). Plaintiff James Weeks ("plaintiff") "routinely purchased a Roundup Ready-to-Use Weed & Grass Killer III product . . . from at least one Home Depot store located in Ventura County, California." (Id. at ¶¶ 8 & 60). Plaintiff alleges that defendant "did not provide [him] with any information regarding the carcinogenic nature of Roundup[,]" (id. at ¶ 61), and that he would not have purchased Roundup if he had known of its alleged carcinogenic properties. (See id. at ¶ 63). According to plaintiff, defendant

"could have, but failed to provide [information about Roundup's alleged carcinogenicity] by, for example, displaying it on the shelves where Roundup was sold (or, for some consumers, on the product pages online)." (Id. at ¶ 62).

"Although Defendant is not involved in the manufacture and design of the Roundup products, Defendant is responsible for passing Roundup down the line to consumers by making it available for purchase, and thus plays an integral role in placing Roundup into the stream of commerce." (Dkt. 18, FAC at ¶ 57). Plaintiff alleges that defendant "was and is aware of the present and substantial danger to consumers while using Roundup in an intended and reasonably foreseeable way and has not alerted consumers of its potential health risks." (Id. at ¶ 59). In support of this claim, plaintiff points to: (1) the International Agency for Research on Cancer's ("IARC") conclusion that glyphosate is "probably carcinogenic to humans," (id. at ¶ 22) (emphasis omitted); (2) the U.S. Environmental Protection Agency's ("EPA") 1985 memorandum classifying glyphosate as a "Category C oncogen[,]" i.e., a possible human carcinogen, (id. at ¶ 26) (internal quotation marks omitted); (3) Monsanto's 1996 settlement of false advertising claims with the state of New York, (see id. at ¶ 30); (4) various studies on the effects of glyphosate, (see id. at ¶¶ 31-36 & 38); (5) the decisions of several foreign governments to ban glyphosate, (see id. at ¶¶ 40-47); (6) three California jury verdicts finding Monsanto liable for failure to warn, (see id. at ¶¶ 49-51); and (7) the decision by the California Office of Environmental Health Hazard Assessment ("OEHHA") to list glyphosate as a chemical known to cause cancer, pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"). (See id. at ¶ 52).

On November 22, 2019, plaintiff filed the operative FAC, in which he alleged a single cause of action pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code. §§ 17200, et seq. (See Dkt. 18, FAC at ¶¶ 78-90). Plaintiff "brings this claim under the 'unfair' prong of" the UCL. (Id. at ¶ 79).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S.

662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

Defendant argues that the court should dismiss plaintiff's UCL claim for several reasons. (See Dkt. 38-1, Memorandum of Points and Authorities in Support of Home Depot U.S.A., Inc.'s

Motion to Dismiss the [FAC] ("Memo.") at 1-2). The court addresses defendant's contentions in turn.

I.   PREEMPTION.

Defendant first contends that plaintiff's UCL claim is preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136, et seq. (See Dkt. 38-1, Memo. at 7-12). FIFRA, originally enacted in 1947, was amended in 1972 to convert it "from a labeling law into a comprehensive regulatory statute." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991, 104 S.Ct. 2862, 2867 (1984). "As amended, FIFRA regulate[s] the use, as well as the sale and labeling, of pesticides; regulate[s] pesticides produced and sold in both intrastate and interstate commerce; [and] provide[s] for review, cancellation, and suspension of registration[.]" Id. at 991-92, 104 S.Ct. at 2867.

"The Supremacy Clause of the Constitution provides that any state law conflicting with federal law is preempted by the federal law and is without effect." Nathan Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1203 (9th Cir. 2002) (citing U.S. Const. art. VI, cl. 2). Courts look to congressional intent to determine whether state law is preempted by a federal statute. See id. "[B]ecause the States are independent sovereigns in our federal system, [courts] have long presumed that Congress does not cavalierly pre-empt state-law causes of action." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250 (1996). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted). Here, defendant argues that both express and conflict preemption apply. (See Dkt. 38-1, Memo. at 7-13).

A.   Express Preemption.

FIFRA contains an express preemption provision which provides:

(a) In general

> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
>
> (b) Uniformity
>
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. §§ 136v(a)-(b).

"For a particular state rule to be pre-empted [by FIFRA], it must satisfy two conditions." Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 444, 125 S.Ct. 1788, 1798 (2005). "First, it must be a requirement for labeling and packaging; rules governing the design of a product, for example, are not preempted." Id. (emphasis and internal quotation marks omitted). "Second, it must impose a labeling or packaging requirement that is in addition to or different from those required under [FIFRA]." Id. (emphasis and internal quotation marks omitted). "[A] state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." Id. at 447, 125 S.Ct. at 1800. In addition, FIFRA registration does not provide "a defense for the commission of any offense under th[e statute]." 7 U.S.C. § 136a(f)(2).

In Bates, the Supreme Court made clear that FIFRA allowed "[p]rivate remedies that enforce [FIFRA's] misbranding requirements[.]" 544 U.S. at 451, 125 S.Ct. at 1802. For example, the Bates Court allowed state-law failure-to-warn claims to go forward as long as those claims were consistent with FIFRA, id. at 452-53, 125 S.Ct. at 1803, even though the EPA had approved the insecticide label at issue. Id. at 434-35, 125 S.Ct. at 1793. Bates thus "established that mere inconsistency between the duty imposed by state law and the content of a manufacturer's labeling approved by the EPA at registration did not necessarily mean that the state law duty was preempted." Hardeman v. Monsanto Co., 216 F.Supp.3d 1037, 1038 (N.D. Cal. 2016) (internal quotation marks omitted).

### 1. Requirement for Labeling and Packaging.

Plaintiff alleges that defendant engaged in an "unfair business practice[]" by selling Roundup without "providing consumers with any additional information on store shelves or at the point of sale about the products' potential health risks." (Dkt. 18, FAC at ¶¶ 1 & 3). FIFRA defines "label" as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p)(1). It also defines "labeling" as "all labels and all other written, printed, or graphic matter . . . accompanying the pesticide or device at any time; or to which reference is made on the label or in literature accompanying the pesticide or device[.]" 7 U.S.C. § 136(p)(2).

The parties each point to different pre-Bates Ninth Circuit cases in arguing whether point-of-sale warnings constitute labeling and packaging, such that FIFRA's preemption provision applies. (See Dkt. 45, Plaintiff's Opposition to Defendant Home Depot U.S.A. Inc.'s Motion to Dismiss the [FAC] ("Opp.") at 7-9); (Dkt. 46, Reply Memorandum in Support of Home Depot U.S.A., Inc.'s Motion to Dismiss the [FAC] ("Reply") at 2-5). Defendant cites Taylor AG Industries v. Pure-Gro, 54 F.3d 555 (9th Cir. 1995), for the proposition that the "Ninth Circuit rejected the argument that FIFRA does not preempt point-of-sale warnings[.]" (Dkt. 46, Reply at 3) (internal quotation marks omitted). In Taylor, the Ninth Circuit held that the "claim for inadequate point-of-sale warnings [wa]s preempted [by FIFRA] because [the] claim [wa]s premised ultimately upon the inadequacy of the product label." 54 F.3d at 561. However, this holding is difficult, if not impossible, to square with the Supreme Court's subsequent determination that state-law tort claims may proceed despite the fact that the EPA had, pursuant to FIFRA, approved the label at issue. See Bates, 434-35 & 452-53, 125 S.Ct. at 1793 & 1803. Bates appears to contradict the notion that a claim based on an inadequate point-of-sale warning can be preempted solely on the ground that it "is premised ultimately on the inadequacy of the product label." Taylor, 54 F.3d at 561.

Plaintiff points to the Ninth Circuit's decision in Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby, 958 F.2d 941 (9th Cir. 1992) ("Allenby") to support its argument that point-of-sale warnings are not preempted by FIFRA. (See Dkt. 45, Opp. at 8). In Allenby, the Ninth Circuit concluded that point-of-sale warnings required by Proposition 65 "clearly are not 'labels' within the

6

meaning of" FIFRA. Id. at 946. The court also found that point-of-sale warnings did not constitute "labeling" under FIFRA because "FIFRA's definition of labeling cannot encompass every type of written material accompanying the pesticide at any time." Id. "If this were true, then price stickers affixed to shelves, sheets indicating that a product is on sale, and even the logo on the exterminator's hat would all constitute impermissible labeling." Id. The court finds the reasoning in Allenby persuasive and consistent with the Bates decision. Accordingly, the court concludes that point-of-sale warnings do not constitute a labeling or packaging requirement within the meaning of FIFRA.[1]

2. **In Addition to or Different from FIFRA Requirements**.

So long as the requirement plaintiff seeks to enforce under state law is consistent with FIFRA, plaintiff's claim is not preempted. See Bates, 544 U.S. at 448, 125 S.Ct. at 1800 (State tort claims which "enforce a federal requirement [do] not impose a requirement that is different from or in addition to, requirements under federal law. To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ.") (internal quotation marks omitted); Hardeman, 216 F.Supp.3d at 1038 ("To the extent [plaintiff's] failure-to-warn claims attack Roundup's product labeling, they are consistent with FIFRA."). FIFRA requires an herbicide label to "contain a warning or caution statement which may be necessary and if complied with . . . is adequate to protect health and the environment[.]" 7 U.S.C. § 136(q)(1)(G). Here, plaintiff contends that the requested point-of-sale warning regarding Roundup's alleged carcinogenicity is consistent with FIFRA's prohibition on "misbranding." (Dkt. 45, Opp. at 9) ("Plaintiff's UCL claim, which is based on Home Depot's decision to knowingly sell a product likely to cause cancer without informing consumers of the health risks parallels requirements imposed by FIFRA's misbranding

---

[1] In a footnote, the Ninth Circuit in Taylor distinguished Allenby by noting that it "merely held that non-label warnings were not preempted by FIFRA and never addressed the issue of whether common law damages could be imposed for the absence of these non-label warnings." Taylor, 54 F.3d at 561 n. 2. Plaintiff in this case does not seek common law damages for the absence of a point-of-sale warning; rather, he seeks injunctive relief and restitution. (Dkt. 18, FAC at p. 19). The Taylor court's basis for distinguishing Allenby is therefore not applicable here.

1 prohibitions.") (citation omitted). Defendant, on the other hand, argues that the inclusion of a
2 point-of-sale warning of Roundup's carcinogenicity would constitute misbranding. (See Dkt. 38-1,
3 Memo. at 9-12). In support of its argument, defendant cites an August 7, 2019, letter from the
4 EPA to "registrants" explaining the EPA's view that glyphosate, the active ingredient in Roundup,
5 is not carcinogenic. (See id. at 9); (Letter from Michael L. Goodis, Director, Registration Division,
6 Office of Pesticide Programs (Aug. 7, 2019) ("2019 EPA Letter")). Defendant asks the court to
7 take judicial notice of the 2019 EPA Letter. (See Dkt. 39, RJN). Defendant claims that it is "not
8 asking the Court . . . to determine the *veracity* of [the statements in the 2019 EPA Letter], but is
9 simply requesting the Court to take judicial notice of the fact that EPA has publicly announced its
10 position regarding cancer warnings on glyphosate products via these statements." (Dkt. 38-1,
11 Memo. at 3, n. 2).

12 Facts subject to judicial notice are those which are either "generally known within the trial
13 court's territorial jurisdiction" or "can be accurately and readily determined from sources whose
14 accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2); see Lee v. City of Los
15 Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public
16 record without converting a motion to dismiss into a motion for summary judgment.") (internal
17 quotation marks omitted). But "[j]ust because [a] document itself is susceptible to judicial notice
18 does not mean that every assertion of fact within that document is judicially noticeable for its truth."
19 Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018), cert. denied, 139 S.Ct.
20 2615 (2019). Here, defendant's preemption arguments are based on the court making a "veracity"
21 finding with respect to the EPA's statements. (See, e.g., Dkt. 38-1, Memo. at 10) ("[W]hen
22 registering the glyphosate products at issue here, EPA explicitly addressed the very labeling
23 question Plaintiff raises, stated its position that the absence of a cancer warning does not render
24 the products misbranded, and required the use of a label that has no cancer warning."). The fact
25 that defendant references the EPA's statements in the 2019 EPA Letter as the EPA's "position"
26 as opposed to its findings, conclusions, etc. does not change the fact that defendant is asking the
27 court to rely on the EPA's factual "determination that glyphosate is not a carcinogen[.]" (See id.
28 at 11). Under the circumstances, the court is unwilling to grant judicial notice to the factual

assertions contained in the 2019 EPA Letter, especially given that, as discussed below, the 2019 EPA Letter does not have the force of law.

However, even assuming the court granted judicial notice to the factual assertions in the 2019 EPA Letter, plaintiff's claim would not be preempted. In defendant's view, a point-of-sale warning about Roundup would be inconsistent with FIFRA because the EPA stated in a letter that glyphosate is not carcinogenic. (See Dkt. 38-1, Memo. at 9-10) ("A state-law requirement to include a warning that deviates from the EPA-approved label – indeed, a warning that EPA has expressly said it would not allow – is 'in addition to' and 'different from' the labeling requirement imposed by EPA under FIFRA."). While the 2019 EPA letter indicates that the EPA would not likely approve a proposal to include a cancer warning on the Roundup label itself, the question here is whether the proposed state law requirement is "in addition to" or "different from" FIFRA, not whether it diverges from a pronouncement of the EPA. See Hardeman, 216 F.Supp.3d at 1038 ("And the mere fact that the EPA has approved a product label does not prevent a jury from finding that the same label violates FIFRA.").

"Because the Supremacy Clause privileges only '[l]aws of the United States,' an agency pronouncement must have the force and effect of federal law to have preemptive force." Reid v. Johnson & Johnson, 780 F.3d 952, 964 (9th Cir. 2015). The Ninth Circuit has "decline[d] to afford preemptive effect to agency actions that do not carry the force of law under [United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164 (2001)] and its progeny." Id. In Mead, the Supreme Court determined that certain agency actions like "policy statements, agency manuals, and enforcement guidelines" should not receive Chevron deference. Mead, 533 U.S. at 234, 121 S.Ct. at 2175. In Reid, the Ninth Circuit applied Mead in the context of determining whether agency action by the FDA merits preemptive force; it concluded that the agency letter explaining the FDA's enforcement intentions lacked preemptive force. See Reid, 780 F.3d at 963-64. The Ninth Circuit noted that "[c]reation of federal law should demand at least the same formality for purposes of preemption as it does for purposes of Chevron deference." Id. at 964 (footnote omitted). Here, as in Reid, the 2019 EPA Letter lacks preemptive force, and is insufficient to establish that plaintiff's request for a point-of-sale warning about Roundup is inconsistent with FIFRA.

Defendant also argues that the EPA's approval of a Roundup label that did not include a cancer warning shows that state law requiring a cancer warning at point-of-sale would be "in addition to" or "different from" the requirements of FIFRA. (See Dkt. 38-1, Memo. at 10) ("[W]hen registering the glyphosate products at issue here, EPA . . . required the use of a label that has no cancer warning."). But "the mere fact that the EPA has approved a product label does not prevent a jury from finding that the same label violates FIFRA." Hardeman, 216 F.Supp.3d at 1038. Indeed, FIFRA states that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under" FIFRA. 7 U.S.C. § 136a(f)(2). Moreover, there is no indication that the EPA's labeling decision has the force of law. Thus, there is no indication the label has preemptive effect. See Mead, 533 U.S. at 234, 121 S.Ct. at 2175 ("In sum, classification rulings are best treated like interpretations contained in policy statements, agency manuals, and enforcement guidelines. They are beyond the Chevron pale.") (internal quotation marks and citation omitted). Though EPA rulemaking would "'necessarily affect the scope of preemption under § 136v(b),' the EPA has promulgated 'relatively few regulations that refine or elaborate upon FIFRA's broadly phrased misbranding standards.'" Hardeman, 216 F.Supp.3d at 1039 (quoting Bates, 544 U.S. at 453 n. 28, 125 S.Ct. at 1804 n. 28).

In light of the foregoing and the general presumption against preemption, see Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 1194-95 (2009) ("In all pre-emption cases, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotation marks and alterations omitted), the court concludes that, even assuming the court takes judicial notice of the 2019 EPA letter, defendant has not met its burden to show that FIFRA expressly preempts plaintiff's UCL claim.

B. Conflict Preemption.

State law conflicts with federal law where "it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution" of a federal mandate. Spreitsma v. Mercury Marine, 537 U.S. 51, 64, 123 S.Ct. 518, 527 (2002) (citation and internal quotation marks omitted). Defendant asserts

that the doctrine of impossibility preemption bars plaintiff's claim. (See Dkt. 38-1, Memo. at 12-13). In support, defendant points to two Supreme Court cases – Wyeth and Merck Sharp & Dohme Corp. v. Albrecht, 139 S.Ct. 1668, 1679 (2019) – on impossibility preemption in the context of the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, et seq. (Id. at 12). In Wyeth, the Supreme Court stated that, "absent clear evidence that the FDA would not have approved a change to [a manufacturer's] label, . . . it [is] not impossible for [a manufacturer] to comply with both federal and state requirements." 555 U.S. at 571, 129 S.Ct. at 1198. The Supreme Court defined "clear evidence" as evidence "that shows the court that the drug manufacturer fully informed the FDA of the justifications for the warning required by state law and that the FDA, in turn, informed the drug manufacturer that the FDA would not approve a change to the drug's label to include that warning." Merck Sharp, 139 S.Ct. at 1672. Defendant argues that this test is satisfied. (See Dkt. 38-1, Memo. at 12-13). First, referencing the August 7, 2019, EPA letter, defendant asserts that the "EPA is 'fully informed' about the supposed evidence that glyphosate is carcinogenic." (Id. at 13). Second, defendant claims that the "EPA's finding that glyphosate poses no cancer risk to humans is 'clear evidence' that EPA would not approve a request to add a cancer warning." (Id.).

"Impossibility preemption is a demanding defense[,]" Wyeth, 555 U.S. at 573, 129 S.Ct. at 1199, and defendant's argument on this score is unpersuasive. Defendant does not explain why the same impossibility preemption principles the Supreme Court applied in the context of the FDCA also apply in the context of FIFRA. (See, generally, Dkt. 38-1, Memo. at 12-13). Indeed, defendant's impossibility "preemption theory is difficult – if not impossible – to square with" Bates. See In re Roundup Prods. Liab. Litig., 364 F.Supp.3d 1085, 1088 (N.D. Cal. 2019) (finding that Bates foreclosed the defendant's implied preemption theory because the Bates court, "in reversing the lower court's conclusion that the plaintiffs' claims had been preempted, . . . necessarily rejected the possibility of implied preemption."). FIFRA allows states to regulate or ban products that have been federally approved. 7 U.S.C. §136v(a); Bates, 544 U.S. at 446, 125 S.Ct. at 1799 (noting that "a state agency may ban the sale of a pesticide if it finds, for instance, that one of the pesticide's label-approved uses is unsafe"). By contrast, "nothing in the FDCA allows a state to

ban a drug." In re Roundup, 364 F.Supp.3d at 1088. This distinction is important because if California can stop defendant or manufacturers from selling Roundup entirely, then it seems inconsistent to conclude that the statute implicitly – but not expressly – preempts a state law requirement that stops short of banning the product. Relatedly, defendant's argument for implied preemption is weakened by the fact that FIFRA's express preemption provision does not foreclose plaintiff's claim. See Bates, 544 U.S. at 459, 125 S.Ct. at 1807 (Thomas, J., concurring in part and dissenting in part) (noting that the majority decision "comports with th[e] Court's increasing reluctance to expand federal statutes beyond their terms through doctrines of implied pre-emption").

## II. DEFENDANT'S PARTICIPATION IN AND CONTROL OF THE ALLEGEDLY UNFAIR BUSINESS PRACTICE.

Defendant next argues that plaintiff's UCL claim fails because plaintiff has insufficiently alleged defendant's participation in and control of the alleged unfair business practices. (See Dkt. 38-1, Memo. at 13-14). To succeed on his UCL claim, plaintiff may show that defendant's liability is due to its own "participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." Emery v. Visa Int'l Serv. Ass'n, 95 Cal.App.4th 952, 960 (2002) (internal quotation marks omitted).

Plaintiff argues that he does not seek to impose vicarious liability on defendant for the acts of the Roundup manufacturer, but rather direct liability on defendant "because it has known Roundup poses potential health risk[s] to consumers, yet continues selling it (without warning consumers on its store shelves, website or at the point of sale) and reaps handsome profits as a result of that activity." (Dkt. 45, Opp. at 17). The parties' dispute appears to be whether and under what circumstances a retailer can be held liable under the UCL for failure to warn regarding the products it sells. (See Dkt. 38-1, Memo. at 15-16) ("Plaintiff's theory is contrary to the established rule that a retailer need not act as a 'global policeman' for the labeling of every product it sells, and cannot be liable simply for selling a product for which the plaintiff claims the labeling is deficient."); (Dkt. 45, Opp. at 17) ("A retailer of a third party's goods may be liable under the UCL, even where the retailer is not the originator of the unfair practices."). The court will deny

defendant's Motion as to this argument without prejudice to raising it at summary judgment. Plaintiff should be allowed to conduct discovery with respect to the scope and extent of defendant's knowledge regarding the health risks to consumers posed by Roundup.

III. PROPOSITION 65.

Defendant argues that although "Plaintiff has styled his claim as a UCL claim, in substance it arises under Proposition 65, which governs claims involving warnings about chemicals with known cancer-causing properties." (Dkt. 38-1, Memo. at 16). Defendant elaborates, "Plaintiff's claim arises under Proposition 65 because he alleges that Home Depot is liable for not issuing a cancer warning for Roundup's active ingredient (glyphosate)." (Id.); Cal. Health & Safety Code § 25249.6 ("No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual[.]"). According to defendant, plaintiff sought to avoid bringing his claim under Proposition 65 because a private plaintiff may only sue under the warning section of Proposition 65 after he has provided a 60-day notice of the alleged violation and a certificate of merit to the alleged violator, the California Attorney General, and the district attorney, city attorney, or prosecutor in each jurisdiction where the alleged violation occurred.[2] (See Dkt. 38-1, Memo. at 17-18); Cal. Health & Safety Code. § 25249.7(d)(1).

Plaintiff argues that his UCL claim is independent of Proposition 65, (see Dkt. 45, Opp. at 19-22), as it "does not arise under Proposition 65, nor does it seek to vindicate a right created by Proposition 65." (Dkt. 18, FAC at ¶ 56). Plaintiff also frames his claim as attacking the Roundup formulation as a whole, rather than only glyphosate, as carcinogenic and harmful. (See Dkt. 45,

---

[2] California courts strictly enforce the notice requirements and hold that defective notice cannot be cured retroactively. See In re Vaccine Cases, 134 Cal.App.4th 438, 458 (2005) ("The question is whether plaintiffs' failure to comply with the pre-suit notice required to bring an action under [Proposition 65] is such an absolute bar to relief. We believe that it is.") (internal quotation marks omitted); DiPirro v. Am. Isuzu Motors, Inc., 119 Cal.App.4th 966, 975 (2004) ("Permitting a private enforcer to serve [the] certificate [of merit] and data after the lawsuit has been filed is . . . an incomplete 'cure.' Although the late service would not interfere with the imposition of sanctions following completion of the lawsuit, it would reduce the effectiveness of prelitigation efforts by the Attorney General to discourage filing the frivolous suit in the first place.").

Opp. at 21). But the FAC focuses primarily on glyphosate, with only brief references to the Roundup formulation. (Compare Dkt. 18, FAC at ¶¶ 17, 19-30, 32, 34-36, 39-44, 46-47, 52, 54-55 with id. at ¶¶ 31, 33, 37-38, 45, 49-51, 57-64); (see, e.g., id. at ¶ 38) ("In addition, it was shown the mixture of the components used as Roundup adjuvants, particularly POEA (polyoxyethyleneamine) amplified the action of the glyphosate. The Roundup formulation adjuvants actually changed human cell permeability and increased the toxicity of glyphosate alone.") (emphasis omitted). And the reference to other chemicals revolves around whether and how other chemicals "amplif[y] the action of the glyphosate." (Id. at ¶ 38). "A duty to disclose a Proposition 65 listed chemical may arise independent of Proposition 65 if a plaintiff identifies a legal duty beyond the omission of the required health-warning label." Harris v. R.J. Reynolds Vapor Co., 2016 WL 6246415, *2 (N.D. Cal. 2016). For the reasons stated, the FAC appears to state a Proposition 65 claim in substance, if not in name. The court will therefore grant plaintiff an opportunity to allege facts sufficient to state a claim independent of Proposition 65. See id. at *3.

Defendant also contends that plaintiff's purported Proposition 65 claim is barred by the preliminary injunction issued in Nat'l Ass'n of Wheat Growers v. Zeise, 309 F.Supp.3d 842 (E.D. Cal. 2018). (See Dkt. 38-1, Memo at 18-19). In Wheat Growers, the court issued a statewide preliminary injunction preventing the state of California from enforcing Proposition 65's warning requirements as to glyphosate. Id. at 854. The court is not convinced, however, that the preliminary injunction covers defendant, even if plaintiff's claim were a Proposition 65 claim in disguise. In Wheat Growers, the court enjoined defendants from enforcing the warning requirement against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs. See id. There is no indication that defendant was a Wheat Growers plaintiff, member of a plaintiff, nor a person represented by a plaintiff. (See Dkt. 38-1, Memo. at 18-19). Additionally, plaintiff in this case was not a defendant in Wheat Growers. See Wheat Growers, 309 F.Supp.3d at 842. The injunction bars enforcement of Proposition 65's warning requirements by those "acting in concert with" defendants, but defendant has not argued that plaintiff is acting in concert with the Wheat

Growers defendants. (See Dkt. 38-1, Memo. at 18-19). The plain text of the Wheat Growers injunction thus indicates that it does not apply in this case.

IV.     FEDERAL PLEADING STANDARD FOR FRAUD.

Next, defendant argues that the FAC's allegations are not sufficiently detailed to meet the requirements of Federal Rule of Civil Procedure 9(b).[3] (See Dkt. 38-1, Memo. at 19-21). Defendant contends that plaintiff's UCL claim is grounded in fraud because he alleges that defendant "was and is aware of the present and substantial danger to consumers while using Roundup . . . and has not alerted consumers of its potential health risks." (Dkt. 18, FAC at ¶ 59); (see Dkt. 38-1, Memo. at 20). Plaintiff counters that his claim does not allege fraud, nor is fraud an essential element of his UCL claim. (See Dkt. 45, Opp. at 23). The court is not persuaded that plaintiff's UCL claim is subject to the requirements of Rule 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2004) ("[I]n a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."). Nonetheless, because the court herein grants plaintiff leave to amend on other grounds, plaintiff may choose to add allegations to shore up his claims against defendant's Rule 9(b) attack, if he believes Rule 9(b) applies.

V.     STANDING TO PURSUE INJUNCTIVE RELIEF.

Finally, defendant argues that plaintiff lacks standing to pursue injunctive relief. (See Dkt. 38-1, Memo. at 22). "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir.), cert. denied, 139 S.Ct. 640 (2018). Where, as here, a plaintiff seeks injunctive relief, the threat of injury must be actual and imminent, not conjectural or hypothetical. See id. "[T]he threatened injury must be certainly impending to constitute injury in fact and allegations of possible future injury are not sufficient." Id. (emphasis in original) (internal quotation marks omitted). "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the

---

[3] All further "Rule" references are to the Federal Rules of Civil Procedure, unless otherwise indicated.

original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." Id. at 969 (internal quotation marks omitted). "[T]he threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." Id. at 969-70. Plaintiff "requests leave to amend to clarify his allegations" with regard to standing. (Dkt. 45, Opp. at 25). The court grants plaintiff's request and will give him leave to amend his standing allegations.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss **(Document No. 38)** is **granted in part** and **denied in part**. The Motion is denied with prejudice as to preemption and denied without prejudice as to defendant's knowledge of glyphosate's alleged carcinogenicity. The Motion is granted with leave to amend with respect to the remaining issues. See supra at §§ III., IV. and V.

2. The FAC **(Document No. 18)** is **dismissed with leave to amend**.

3. If plaintiff still wishes to pursue this action, he is granted until **October 2, 2020**, to file a second amended complaint attempting to cure the deficiencies set forth above. The court expects that defendant will agree to any amendments that will or attempt to cure the alleged defects.

4. The second amended complaint must be labeled "Second Amended Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case, i.e., Case No. CV 19-6780 FMO (ASx). In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make his Second Amended Complaint complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading no longer performs any function[.]'") (citations and internal quotation marks omitted).

5. Plaintiff is cautioned that failure to timely file a Second Amended Complaint shall result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962).

6. Defendant shall file its Answer to the Second Amended Complaint or a motion pursuant to Fed. R. Civ. P. 12(b)(6) no later than **October 16, 2020**. The Rule 12(b)(6) motion shall be limited to addressing the issues discussed in §§ III., IV. and V. of this Order

7. In the event defendant wishes to file another motion to dismiss, then counsel for the parties shall, on **October 9, 2020, at 10:00 a.m.**[4] meet and confer telephonically or in person at an agreed upon location within the Central District of California to discuss defendant's motion to dismiss. Defendant's motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion being denied.

Dated this 18th day of September, 2020.

/s/
Fernando M. Olguin
United States District Judge

---

[4] Counsel may agree to meet and confer at another time without seeking court approval for such an agreement.